Thomas M. NYEHOLT, Petitioner,

v.

**SECRETARY OF VETERANS AFFAIRS, Respondent.**

No. 01–7107.

United States Court of Appeals, Federal Circuit.

Aug. 6, 2002.

Daniel D. Wedemeyer, Wedemeyer & Prangley, of Santa Ana, CA, argued for petitioner.

James H. Holl, III, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, argued for respondent. With him on the brief were Robert D. McCallum, Jr., Assistant Attorney General; David M. Cohen, Director; and Franklin E. White, Jr., Assistant Director. Of counsel on the brief were Donald E. Zeglin, Deputy Assistant General Counsel, and Martie Adelman, Attorney, Department of Veterans Affairs, of Washington, DC.

Before MAYER, Chief Judge, LOURIE and LINN, Circuit Judges.

LOURIE, Circuit Judge.

Thomas M. Nyeholt petitions this court under 38 U.S.C. § 502 for review of the recently amended portion of the Schedule for Rating Disabilities in 38 C.F.R. § 4.114 addressing disabilities of the liver, Diagnostic Code ("DC") 7351. Nyeholt asserts that DC 7351 is unconstitutionally vague, and as a result requests that it be declared invalid. Because we conclude that Nyeholt's challenge is without merit, we deny his petition.

## BACKGROUND

On August 7, 2000, the Department of Veterans Affairs ("DVA") issued a notice of proposed rulemaking to amend the portion of the digestive-system rating schedule pertaining to liver disabilities. Schedule for Rating Disabilities: Disabilities of the Liver, 65 Fed.Reg. 48,205 (Aug. 7, 2000). The final rule, which includes DC 7351, was published on May 31, 2001, and became effective on July 2, 2001. Schedule for Rating Disabilities: Disabilities of the Liver, 66 Fed.Reg. 29,486 (May 31, 2001) (codified at 38 C.F.R. § 4.114). DC 7351 reads as follows:

> 7351 Liver transplant:
> For an indefinite period from the date of hospital admission for transplant surgery . . . . . . . . . . . . . . . 100
> Minimum . . . . . . . . . . . . . . 30
> Note: A rating of 100 percent shall be assigned as of the date of hospital admission for transplant surgery and shall continue. One year following discharge, the appropriate disability rating shall be determined by mandatory VA examination. Any change in evaluation based upon that or any subsequent examination shall be subject to the provisions of § 3.105(e) of this chapter.

38 C.F.R. § 4.114 (2001).

Mr. Nyeholt is currently assigned a one hundred percent evaluation rating for residual conditions resulting from a March 1, 1991, liver transplant. On August 30, 2001, Nyeholt petitioned this court for review of DC 7351 pursuant to 38 U.S.C. § 502, asserting that DC 7351 is unconstitutional under the void-for-vagueness doctrine.

## DISCUSSION

A. *Jurisdiction*

■ As a preliminary matter, we must determine whether we have jurisdiction to entertain Nyeholt's petition under 38 U.S.C. § 502. Section 502 provides in relevant part that:

An action of the Secretary to which section 552(a)(1) or 553 of title 5 (or both) refers (*other than an action relating to the adoption or revision of the schedule of ratings for disabilities adopted under section 1155 of this title*) is subject to judicial review. Such review shall be in accordance with chapter 7 of title 5 and may be sought only in the United States Court of Appeals for the Federal Circuit....

38 U.S.C. § 502 (2000) (emphasis added).

Nyeholt argues that we have jurisdiction to hear his void-for-vagueness challenge to DC 7351 because, although § 502 excludes "actions relating to the ... schedule of ratings" from its grant of jurisdiction, it does not specifically preclude constitutional challenges from being brought under that provision. Nyeholt argues that under the Supreme Court's decision in *Johnson v. Robison,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974), which addressed an earlier statute delineating the scope of review of a decision of the DVA, "clear and convincing evidence" is needed in order to overcome the presumption that judicial review is available for constitutional challenges to the schedule of ratings. Nyeholt contends that neither the language of § 502 nor its legislative history provides such evidence, and further argues that the only relevant legislative history addressing the issue, a statement in a report issued by the House Veterans' Affairs Committee, is directly to the contrary.

The Secretary of Veterans Affairs responds that the statutory scheme created by the text and legislative history of § 502, when read in conjunction with those of 38 U.S.C. § 7252(a)[1] and 38 U.S.C. § 7292(b)[2], clearly establishes that Congress has foreclosed all judicial review of matters pertaining to the rating schedule and thus overcomes the presumption that judicial review of constitutional challenges is available. The Secretary also argues that there is no indication in § 502 that Congress intended to exempt constitutional challenges from its blanket prohibition on judicial review, contrary to the express provision for review of constitutional challenges in §§ 7292(c) and (d)(1).[3] The Secretary further contends that because the

1. Section 7252(a) reads in relevant part as follows:

 After a decision of the United States Court of Appeals for Veterans Claims is entered in a case, any party to the case may obtain a review of the decision with respect to the validity of any statute or regulation (*other than a refusal to review the schedule of ratings for disabilities adopted under section 1155 of this title*) or any interpretation thereof (other than a determination as to a factual matter) that was relied on by the Court in making the decision.

 38 U.S.C. § 7292(a) (2000) (emphasis added).

2. Section 7252(b) is as follows:

 Review in the Court shall be on the record of proceedings before the Secretary and the Board. The extent of the review shall be limited to the scope provided in section 7261 of this title. *The Court may not review the schedule of ratings for disabilities adopted under section 1155 of this title or*

 *any action of the Secretary in adopting or revising that schedule.*

 38 U.S.C. § 7252(b) (2000) (emphasis added).

3. The relevant portions of § 7292(c) and (d)(1) read as follows:

 (c) The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction to review and decide any challenge to the validity of any statute or regulation or any interpretation thereof brought under this section, and *to interpret constitutional and statutory provisions, to the extent presented and necessary to a decision.*

 . . .

 (d)(1) The Court of Appeals for the Federal Circuit shall decide all relevant questions of law, including interpreting constitutional and statutory provisions. *The court shall hold unlawful and set aside any regulation or any interpretation thereof* (other than a determination as to a factual matter) *that*

House Veterans' Affairs Committee statement relied upon by Nyeholt appears nowhere in the corresponding Senate report, there is no indication that the full Congress adopted that statement. Finally, the Secretary argues that Nyeholt's reliance on *Johnson* is misplaced because that case addressed a different jurisdictional statute and involved a challenge to a legislative enactment, rather than an administrative enactment such as DC 7351.

 We conclude that we have jurisdiction to review constitutional challenges to the schedule of ratings under § 502. Only upon a showing of "clear and convincing evidence" of congressional intent may access to judicial review be restricted. *Abbott Labs. v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). The evidence relied upon by the Secretary in arguing that we lack jurisdiction under § 502 over constitutional challenges relating to the schedule of ratings falls short of that standard.

Although § 502 plainly excepts from appealability "actions relating to the ... schedule of ratings" from its jurisdictional grant, nowhere in the text of that provision are constitutional challenges mentioned. The Secretary acknowledges that fact, but argues that the express provision for review of constitutional challenges in 38 U.S.C. § 7292(c) and (d)(1), and the absence of any corresponding reference in § 502, demonstrates that Congress did not intend to provide this court with the power to review such challenges under § 502. He thus in effect argues that the implication created by the presence of a provision in one portion of a statute (here, § 7292) and the absence of that provision in another (here, § 502) can constitute the clear and convincing evidence of jurisdictional

restriction needed to arrive at the conclusion that Congress intended to preclude this court from reviewing constitutional challenges. However, aside from the fact that adopting the Secretary's argument would act to reverse the presumption that review of constitutional challenges is available under § 502, the only relevant legislative history is directly to the contrary.

As noted by Nyeholt, the House Veterans' Affairs Committee's report made clear that it intended to "expressly preclude[ ] review of the schedule in the bill (*except for challenges to the constitutionality of the schedule* )." H.R.Rep. No. 100–963, at 28 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5782, 5810 (emphasis added). This statement, although not conclusive of the intent of Congress, indicates that review of constitutional challenges to the schedule of ratings was to be preserved. Furthermore, the fact that the corresponding Senate report does not include a similar statement cannot be interpreted as evidence sufficient to overcome the presumption that judicial review of constitutional challenges is available. Rather, absent an express provision that such review is prohibited, we read the legislative history, such as it is, as confirming our view that Congress did not intend to preclude constitutional challenges from review under § 502. *Cf. Griffith v. Fed. Labor Relations Auth.*, 842 F.2d 487, 495 (D.C.Cir.1988) (holding that a conference committee's deletion of a provision in the original Senate bill expressly providing for review of constitutional claims did not support an inference strong enough to satisfy the "clear and convincing evidence" standard for precluding constitutional challenges).

Furthermore, our conclusion that we have jurisdiction to hear constitutional

---

*was relied upon in the decision of the Court of Appeals for Veterans Claims that the Court of Appeals for the Federal Circuit finds to be ...*

(B) *contrary to constitutional right,* power, privilege, or immunity....

38 U.S.C. § 7292(c), (d)(1)(B) (2000) (emphases added).

challenges under § 502 is on all fours with the Supreme Court's analysis in *Johnson.* *Johnson* involved the identical issue presented in this case, albeit in the context of an earlier, now-defunct statute, 38 U.S.C. § 211(a), which governed appeals from decisions of the Veterans' Administration, the predecessor to the DVA. That provision read in relevant part as follows:

> [T]he decisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans ... *shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision* by an action in the nature of mandamus or otherwise.

38 U.S.C. § 211(a) (1972). The veteran in *Johnson* was a Class I O conscientious objector whose application for educational assistance under the Veterans' Readjustment Benefits Act of 1966 was denied as a result of his objector status. 415 U.S. at 363, 94 S.Ct. 1160. The veteran sought a declaratory judgment that the statutory provisions precluding him from obtaining educational assistance on account of his conscientious objector status violated his First Amendment right to religious freedom and his right to equal protection under the Due Process Clause of the Fifth Amendment. *Id.* The Veterans' Administration argued that such a challenge was barred under § 211(a). *Id.*

The Court held that the veteran's constitutional challenges were not precluded from review under § 211(a). *Id.* at 373–74, 94 S.Ct. 1160. At the outset, the Court noted that a construction of § 211(a) that barred any federal court from reviewing constitutional challenges to veterans' benefits legislation would "raise serious questions [of] constitutionality." *Id.* at 366–67, 94 S.Ct. 1160. The Court also observed that such challenges were not expressly prohibited by the language of § 211(a) or its legislative history, and that the administrative practice of the Veterans' Administration was to disclaim authority to address those claims. *Id.* at 367–373, 94 S.Ct. 1160. Considering all of the above factors, the Court determined that nothing in the text or legislative history of § 211(a) provided the "clear and convincing evidence" of congressional intent necessary to restrict access to judicial review of constitutional challenges. *Id.* at 373–74, 94 S.Ct. 1160.

Our analysis of the text and legislative history of § 502 leads us to the same conclusion reached by the Court in *Johnson.* As discussed above, nothing in the text of § 502 addresses the reviewability of constitutional claims, and the only relevant legislative history suggests that Congress intended that review of constitutional challenges to the ratings schedule be preserved. Although the "serious questions" referred to by the Supreme Court posed by the lack of any federal judicial forum for review of constitutional claims do not seem to be implicated here in light of the possible alternative means of review available to veterans seeking to bring constitutional challenges to the schedule under § 7292(d)(1),[4] the totality of the evidence

---

4. A veteran may have an alternative avenue by which to assert a constitutional challenge to the schedule of ratings. Although 38 U.S.C. § 7252(a), which has language similar to that found in § 502, precludes the United States Court of Veterans Claims from "review[ing] the schedule of ratings for disabilities ... or any action of the Secretary in adopting or revising that schedule," 38 U.S.C. § 7252(b), and 38 U.S.C. § 7292(a) precludes this court from reviewing "a refusal [by the Court of Appeals for Veterans Claims] to review the schedule of ratings for disabilities," 38 U.S.C. § 7292(a), § 7292(d)(1)(B) provides that this court has jurisdiction to "set aside any regulation or any interpretation thereof ... that was relied upon in the decision of the

nevertheless leads us to conclude that we have jurisdiction over such challenges under the "clear and convincing evidence" standard.

Moreover, we are not persuaded by the Secretary's argument that the analysis in *Johnson* does not apply to the facts of this case because review of an administrative enactment, as opposed to legislation, is at issue here. Rather, we agree with the conclusion of the United States Court of Appeals for the District of Columbia Circuit that it is irrelevant whether Congress attempts to insulate its own enactments from review or those of the agencies that it charges with the duty to administer those enactments. *Ralpho v. Bell*, 569 F.2d 607, 620 (D.C.Cir.1977) (concluding that "a statute purporting to foreclose judicial redress of constitutional violations allegedly perpetrated by an administrative agency must be construed in accordance with the standards articulated in *Johnson v. Robison* "); *Ungar v. Smith*, 667 F.2d 188, 193 (D.C.Cir.1981) ("[T]he same standard will be applied when the Government asserts that Congress intended a general proscription of judicial review to bar judicial cognizance of a claim that an administrative agency, in applying the statute, acted unconstitutionally.") (citing *Ralpho; Devine v. Cleland*, 616 F.2d 1080, 1084–85 (9th Cir.1980)). We therefore conclude that we have jurisdiction under § 502 to consider Nyeholt's constitutional claim, and thus we turn next to the merits of his petition.

**B.** *The Merits of Nyeholt's Constitutional Challenge*

"Petitions under 38 U.S.C. § 502 are reviewed 'in accordance with chapter 7 of title 5,' *i.e.*, under the Administrative Procedure Act ("APA") standard of review," *Disabled Am. Veterans v. Gober*, 234 F.3d 682, 691 (Fed.Cir.2000) (citations omitted), The APA requires a reviewing court to determine whether an agency's action or rule at issue is, *inter alia*, "contrary to constitutional right, power, privilege, or immunity," 5 U.S.C. § 706(2)(B) (2000).

Nyeholt argues that DC 7351 is contrary to his rights under the Due Process Clause of the Fifth Amendment in that it is unconstitutionally vague. He asserts that DC 7351 should be held to be void for vagueness because it provides no standards whatsoever to govern the assignment of any rating evaluation greater than thirty percent, and because it is unclear what a veteran is required to do in order to retain a one hundred percent disability rating. Nyeholt further contends that if DC 7351 is applied to him, he has no chance of retaining his one hundred percent rating because, unless he undergoes a second liver transplant, he will never be admitted to a hospital for transplant surgery, as DC 7351 requires.

The Secretary responds that Nyeholt has failed to assert a challenge that is cognizable under the void-for-vagueness doctrine because that doctrine relates only to regulations or statutes involving prohib-

---

Court of Appeals for Veterans Claims" that this court finds to be "contrary to constitutional right," 38 U.S.C. § 7292(d)(1)(B). A veteran who was denied or had his or her benefits reduced by a decision of the DVA that "relied upon" the rating schedule in question may therefore have the right to challenge the constitutionality of that schedule on appeal to this court under § 7292(d)(1)(B). *See In re Bailey*, 182 F.3d 860, 865–66 (Fed.Cir.1999) (stating that "no one subsection alone defines our jurisdiction, but rather all of them must be reviewed, and must be read together," and that, with respect to § 7292(d), "[t]he only limitation on the obligation to decide questions of constitutional interpretation is that they be 'relevant' "). The viability of such an avenue of appeal concerning constitutional challenges to the schedule of ratings is not before us, and we therefore express no view on the matter.

ited conduct, whereas DC 7351 serves as a guide in the evaluation of a service-connected disability incurred as a result of a veteran undergoing a liver transplant. The Secretary also argues that, in any event, DC 7351 is not void for vagueness. The Secretary contends that, contrary to Nyeholt's assertion, Nyeholt could in fact continue to receive a one hundred percent rating, as DC 7351 provides that a veteran's initial rating continues "for an indefinite period." The Secretary also argues that in the case in which a veteran does not qualify for a one hundred percent disability rating, the schedule of ratings provides sufficient standards concerning what specific rating a veteran would receive because of the ability to assign hyphenated ratings under 38 C.F.R. § 4.27.

We conclude that Nyeholt's petition fails on the merits. The Supreme Court set forth the general standard governing void-for-vagueness challenges in *Grayned v. City of Rockford:* "It is a basic principle of due process that an enactment is void for vagueness if its *prohibitions* are not clearly defined." 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) (emphasis added). The Court in *Grayned* explained the basic policies underlying that doctrine as follows:

> First, because we assume that man is *free to steer between lawful and unlawful conduct,* we insist that laws give the person of ordinary intelligence a *reasonable opportunity to know what is prohibited,* so that he may act accordingly.... Second, if arbitrary and discriminatory *enforcement* is to be prevented, laws must provide explicit standards for those who apply them.

*Id.* at 108–109, 92 S.Ct. 2294 (emphases added). Thus, the void-for-vagueness doctrine was held to relate to prohibitions, not to entitlements, which are at issue here. Consistent with that approach, the Court has steadfastly applied the void-for-vague-

ness doctrine only to statutes or regulations that purport to define the lawfulness of conduct or speech. *See, e.g., Kolender v. Lawson,* 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) (applying the doctrine to a California statute requiring an individual to present "credible and reliable" information when requested by a police officer who has reasonable suspicion of criminal activity); *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) (applying the doctrine to village ordinance requiring a business to obtain a license if it sells any items that are "designed or marketed for use with illegal cannabis or drugs"); *Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972) (applying the doctrine to a vagrancy ordinance); *Kunz v. New York,* 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280 (1951) (applying the doctrine to an ordinance making it unlawful to hold public worship on the streets of New York City without first obtaining a permit from the police commissioner); *Herndon v. Lowry,* 301 U.S. 242, 57 S.Ct. 732, 81 L.Ed. 1066 (1937) (applying the doctrine to a Georgia statute defining criminal offense of attempting to incite an insurrection). We are unable to find, and Nyeholt has not pointed us to, any controlling precedent holding or any case in any other jurisdiction supporting the notion that a statute or regulation that does not purport to define the lawfulness or unlawfulness of either conduct or speech can be challenged under the void-for-vagueness doctrine. Furthermore, no precedent applying the doctrine to legislative entitlements to benefits has been cited.

■ The United States Court of Appeals for the Eleventh Circuit was confronted with the scope of the void-for-vagueness doctrine in *Woodruff v. United States,* 954 F.2d 634 (11th Cir.1992). In that case, the appellant alleged that, *inter*

*alia,* a provision in a procedural manual that established guidelines for determining whether an injured employee is eligible for compensation under the Federal Employees' Compensation Act ("FECA") was void for vagueness because it failed to set forth any standard or definition for the term "premises." *Id.* at 641. The court, citing *Grayned,* held the void-for-vagueness challenge to be "wholly without merit" because the provision at issue "does not attempt to guide conduct, but is merely an interpretive rule for the [agency] to follow in making FECA coverage determinations." *Id.* at 642. We agree with the analysis of the Eleventh Circuit in *Woodruff* and conclude that, under the standard set forth in *Grayned* and other decisions of the Supreme Court, a void-for-vagueness challenge must be directed to a statute or regulation that purports to define the lawfulness or unlawfulness of speech or conduct.

 In the case at hand, it is clear that DC 7351 does not purport to define what is lawful and unlawful conduct, nor does it relate to speech. Rather, DC 7351 merely serves as a guide that medical examiners employed by the DVA use in determining whether and to what degree a veteran is disabled for purposes of awarding benefits. That is to say, regardless of the thoroughness of the rating scheme set forth in DC 7351, a veteran's physical condition is what it is. Accordingly, we conclude that Nyeholt's petition fails to present a constitutional challenge that is cognizable under the void-for-vagueness doctrine.

Nevertheless, at oral argument, counsel for Nyeholt argued that DC 7351 in fact regulates conduct in that a veteran's presentation of evidence will be dependent upon the standards set forth in DC 7351. However, standards of proof that must be satisfied in order to obtain government benefits are not analogous to standards that inform the public what one can or cannot do without incurring civil and/or criminal penalties, and the policies underlying the void-for-vagueness doctrine, *see Grayned,* 408 U.S. at 108–09, 92 S.Ct. 2294, are simply not implicated by statutes and regulations containing the former category of standards. We therefore conclude that whatever arguments one may assert regarding the validity of DC 7351, they do not include a challenge under the void-for-vagueness doctrine. Consequently, we deny his petition on the merits.

## CONCLUSION

Because we conclude that Nyeholt's petition is without merit, his petition is

*DENIED.*