# United States Court of Appeals
# for the Federal Circuit

---

**NATIONAL ORGANIZATION OF VETERANS'
ADVOCATES, INC.,**
*Petitioner,*

**v.**

**SECRETARY OF VETERANS AFFAIRS,**
*Respondent.*

---

**PARALYZED VETERANS OF AMERICA,**
*Petitioner,*

**v.**

**SECRETARY OF VETERANS AFFAIRS,**
*Respondent.*

---

**VETERANS OF MODERN WARFARE
AND NATIONAL VETERANS LEGAL SERVICES
PROGRAM,**
*Petitioners,*

**v.**

**SECRETARY OF VETERANS AFFAIRS,**
*Respondent.*

---

**WOUNDED WARRIOR PROJECT
AND VIETNAM VETERANS OF AMERICA,**
*Petitioners,*

**v.**

## SECRETARY OF VETERANS AFFAIRS,
*Respondent.*

––––––––––––––––––––

2010-7136, -7139, -7142, 2011-7041

––––––––––––––––––––

On petition for review pursuant to 38 U.S.C. Section 502.

––––––––––––––––––––

Decided: January 20, 2012

––––––––––––––––––––

DAVID H. TENNANT, Nixon Peabody, LLP, of Rochester, New York, argued for petitioner. On the brief were RICHARD P. COHEN, National Organization of Veterans' Advocates, Inc., of Washington, DC; and DOUGLAS J. ROSINSKI, Pillsbury Winthrop Shaw Pittman, LLP, of San Francisco, California.

MICHAEL P. HORAN, Deputy General Counsel, Paralyzed Veterans of America, of Washington, DC, argued for petitioner. With him on the brief were WILLIAM S. MAILANDER, General Counsel, and JENNIFER A. ZAJAC, Assistant General Counsel.

BARTON F. STICHMAN, National Veterans Legal Services Program, of Washington, DC, argued for the petitioners. Of counsel on the brief were STEPHEN B. KINNAIRD and SEAN D. UNGER, Paul Hastings Janofsky & Walker, LLP, of Washington, DC.

SCOTT D. AUSTIN, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued respondent. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and MARTIN F. HOCKEY, JR., Assistant Director. Of counsel on the brief were MICHAEL J. TIMINSKI, Deputy Assistant General Counsel, and MARTIE ADELMAN, Attorney, of United States Department of Veterans Affairs, of Washington, DC.

MICHAEL WISHNIE, Veterans Legal Services Clinic, of New Haven, Connecticut, for amici curiae. With him on the brief was JEFFREY SELBIN.

---

Before NEWMAN, O'MALLEY, and REYNA, *Circuit Judges*.

REYNA, *Circuit Judge*.

The National Organization of Veterans Advocates, Paralyzed Veterans of America, Veterans of Modern Warfare and National Veterans Legal Services (collectively "Petitioners") challenge a rule issued by the Secretary of Veterans Affairs ("Secretary") amending 38 C.F.R § 3.304(f) with respect to claims for service-connected disability benefits for posttraumatic stress disorder ("PTSD"). Petitioners contend that the new rule is contrary to existing statutes and arbitrary and capricious in nature. We conclude that the new rule is a permissible application of the statute by the Secretary and not in violation of any law or rule. We therefore deny the petition.

I

The rule at issue here concerns PTSD. The Diagnostic and Statistical Manual of Mental Disorders, Fourth

Edition ("DSM-IV"), classifies PTSD as an anxiety disorder. A person may develop PTSD after exposure to a stress inducing event, such as threatened death or serious injury. Persons suffering from PTSD reexperience the traumatic event in several ways, including nightmares, flashbacks, and physiological or psychological reactions to stimuli reminiscent of the damaging experience. As a result, those suffering from PTSD may remove themselves from the world and those around them in an effort to avoid that which could trigger a response. Tragically, an estimated ten to thirty percent of United States Armed Services personnel will develop PTSD within a year of leaving combat. *See* Nat'l Council on Disability, Invisible Wounds: Serving Service Members and Veterans with PTSD and TBI 2-3 (Mar. 4, 2009), *available at* http://www.ncd.gov/publications/2009/March042009 ("Invisible Wounds").

The United States has deployed over 1.6 million troops in the recent wars in Iraq and Afghanistan. *Id.* at 8. Those conflicts have been characterized by guerilla warfare tactics and the inherent uncertainty that comes with it. Moreover, many troops have served multiple tours of duty with little respite in between. It is no surprise that these conditions are particularly likely to lead to increased incidences of PTSD. *See id.* at 21-23.

The troops who return home and develop PTSD are often faced with more than reliving the horrors of war. Veterans with PTSD suffer from more chronic conditions and have shorter life spans than veterans without PTSD. PTSD has also been linked to higher divorce rates and joblessness. *Id.* at 18. Against this backdrop, the Secretary amended the Department of Veterans Affairs ("VA") regulations to address the serious problem of troops returning home with PTSD.

## II

Like other injuries, veterans who suffer from service-connected PTSD are eligible for benefits. The Secretary has the authority to issue regulations which establish the requirements for veterans to qualify for service-connected PTSD injuries. 38 U.S.C. § 501(a). Specific rules govern the diagnosis of PTSD and the evidence required to connect a diagnosis to military service. Generally, a finding of PTSD service-connection requires three components: "medical evidence diagnosing the condition in accordance with § 4.125(a) of this chapter; a link, established by medical evidence, between current symptoms and an in-service stressor; and credible supporting evidence that the claimed in-service stressor occurred." 38 C.F.R. § 3.304(f).

The VA proposed a rule on August 24, 2009, creating an additional situation where a veteran could establish PTSD service-connection without supporting evidence regarding the claimed in-service stressor. Stressor Determinations for Posttraumatic Stress Disorder, 74 Fed. Reg. 42,617 (Aug. 24, 2009). That rule, codified at 38 C.F.R. § 3.304(f)(3), is at issue here:

> If a stressor claimed by a veteran is related to the veteran's fear of hostile military or terrorist activity and a VA psychiatrist or psychologist, or a psychiatrist or psychologist with whom VA has contracted, confirms that the claimed stressor is adequate to support a diagnosis of posttraumatic stress disorder and that the veteran's symptoms are related to the claimed stressor, in the absence of clear and convincing evidence to the contrary, and provided the claimed stressor is consistent with the places, types, and circumstances of the veteran's service, the veteran's lay testimony alone may establish the occurrence of the claimed

in-service stressor. For purposes of this paragraph, "fear of hostile military or terrorist activity" means that a veteran experienced, witnessed, or was confronted with an event or circumstance that involved actual or threatened death or serious injury, or a threat to the physical integrity of the veteran or others, such as from an actual or potential improvised explosive device; vehicle-imbedded explosive device; incoming artillery, rocket, or mortar fire; grenade; small arms fire, including suspected sniper fire; or attack upon friendly military aircraft, and the veteran's response to the event or circumstance involved a psychological or psycho-physiological state of fear, helplessness, or horror.

The new rule has three features relevant to this challenge: one, it allows a veteran to establish PTSD without supporting evidence; two, the lower evidentiary standard only applies if a VA psychologist or psychiatrist, or one who has contracted with the VA, confirms the claimed-stressor supports the diagnosis; and three, it defines the veteran's "fear of hostile military or terrorist activity" as involving a response characterized by "a psychological or psycho-physiological state of fear, helplessness, or horror." *Id.* As explained by the Secretary at oral argument, the rule does not require a VA practitioner to confirm the diagnosis of PTSD. Rather, a VA practitioner is only required to confirm that the claimed-stressor supports the diagnosis.

The VA explained that the rule was "intended to acknowledge the inherently stressful nature" of serving where "hostile military or terrorist activities [are] ongoing." 74 Fed. Reg. at 42,617. The goal was "to facilitate the timely VA processing of PTSD claims by simplifying the development and research procedures that apply to

these claims." *Id.* Pursuant to procedure, the VA invited responses to the proposed rule and received 126 comments, including critiques, from various organizations, including Petitioners here.

The VA responded to the comments but left the rule as proposed. 75 Fed. Reg. 39,843 (July 13, 2010). The majority of comments were aimed at the rule's distinction between private psychologists and psychiatrists and those employed or associated with the VA. The comments suggested that the new rule should extend to all qualified practitioners. The VA declined to extend the rule beyond VA practitioners, explaining that PTSD diagnoses are "particularly complex." *Id.* at 39,847. This complexity was only increased as the new rule added an extra wrinkle—the examiner would now also make the "forensic" determination that the claimed-stressor as described by the veteran was sufficient to support a PTSD diagnosis. *See id.*

VA practitioners, the VA contended, were particularly able to make this forensic determination for several reasons: First, VA practitioners are given specific instruction on how to conduct PTSD examinations, including guidance materials and a certification process. *Id.* Second, the VA reviews the quality of its practitioners' examinations, including taking steps to address identifiable problems with feedback and training. *Id.* Third, the VA provides VA associated practitioners with the veterans' claims folders in connection with all mental-disorder examinations, including PTSD examinations. *Id.* The practitioners are in turn instructed that a PTSD diagnosis cannot occur without a review of the folder. In contrast, private practitioners do not have direct access to a veteran's claims folder. *Id.* at 39,847-48. Fourth, the VA noted that limiting the rule to VA associated practitioners would "ensure standardization and consistency." *Id.* at

39,848.  The consistency would be a product of both the large number of PTSD examinations performed by VA practitioners and the review of those examinations by the VA.  Because the VA does not control the quality of private practitioners' examinations, it could not ensure, manage, or develop the same level of quality and consistency.  For these reasons, the VA opted to leave the rule as proposed.  *Id.*

Petitioners subsequently filed a timely petition to review the final rule.  This court has jurisdiction to review the validity of the final rule under 38 U.S.C. § 502.  The review is conducted in accordance with 5 U.S.C. § 706 of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 et seq.

## III

We examine the regulation here under the framework provided in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).  First, we must determine "whether Congress has directly spoken to the precise question at issue.  If the intent of Congress is clear, that is the end of the matter . . . ."  *Id.* at 842.  Second, if "Congress has not directly addressed the precise question at issue," we must determine if the Secretary's regulation is "based on a permissible construction of the statute."  *Id.* at 843.  The agency's regulation will stand unless it is "arbitrary or capricious in substance, or manifestly contrary to the statute."  *United States v. Mead Corp.*, 533 U.S. 218, 227 (2001).

## IV

On appeal, Petitioners assert that the new VA rule: (1) conflicts with statutes and regulations that require the VA to consider all medical evidence on a case-by-case basis, including evidence from private physicians, and

that require the VA to give the veteran the benefit of the doubt when considering all evidence in the record; (2) improperly includes language that is not required in the DSM-IV; and (3) should be set aside as arbitrary and capricious on grounds that none of the VA's proffered explanations provides a rational basis for excluding private doctors' opinions. We address each argument in turn.

## A. The VA Rule

The Secretary issued the rule pursuant to 38 U.S.C. § 501(a). That statute provides the Secretary with the ability to prescribe all "necessary" and "appropriate" rules to carry out the laws administered by the VA, including "regulations with respect to the nature and extent of proof and evidence and the method of taking and furnishing them in order to establish the right to benefits under such laws . . . ." 38 U.S.C. § 501(a)(1). Congress's delegation of authority here was broad. Nonetheless, Petitioners contend that the regulation is in conflict with several statutes and is therefore contrary to law. We disagree and find that Congress has not spoken on the precise issue addressed by the new rule.

First, Petitioners contend that the regulation is contrary to 38 U.S.C. § 1154(a). Section 1154(a) requires that the Secretary's regulations concerning veterans' benefits claims give "due consideration" to "the places, types, and circumstances of such veteran's service" including "all pertinent medical and lay evidence." 38 U.S.C. § 1154(a). Petitioners contend that because the regulation allows for a PTSD service connection to be established based on a VA practitioner's conclusion without corroborating evidence but not a private practitioner's, the rule does not give "due consideration" to all medical evidence.

Petitioners' argument reads too much into the phrase "due consideration." Rather than directly addressing what "due consideration" entailed, Congress left that task to the Secretary. *See id.*; 38 U.S.C. § 501(a)(1). Under the regulation, a private practitioner's examination will be considered along with a VA practitioner's assuming there is also corroborating evidence of the claimed stressor. The new rule, however, provides a relaxed evidentiary standard only where a VA practitioner concludes that the claimed-stressor occurred. Because the phrase "due consideration" is unambiguous and private examinations are considered in the normal course of a PTSD determination, the new rule cannot be said to directly conflict with § 1154(a).

Second, Petitioners contend that the regulation is contrary to 38 U.S.C. § 5125, which provides that:

> For purposes of establishing any claim for benefits under chapter 11 or 15 of this title, a report of a medical examination administered by a private physician that is provided by a claimant in support of a claim for benefits under that chapter may be accepted without a requirement for confirmation by an examination by a physician employed by the Veterans Health Administration if the report is sufficiently complete to be adequate for the purpose of adjudicating such claim.

The key word in the statute is "may." The VA "may" accept a private physician's report, but it does not have to. *See id.* To the extent Petitioners contend that the VA must consider private practitioner's reports in all circumstances, Congress has directly addressed that issue here and concluded only that the VA "may" accept such reports. Also, the new rule does not require a VA confirma-

tion of a medical examination by a private practitioner. As such, the rule is not in direct conflict with § 5125.

Third, Petitioners contend that the new rule is contrary to 38 U.S.C. § 5107(b), which provides that:

> The Secretary shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant.

The statute is clear that the Secretary shall consider all medical evidence and give the benefit of the doubt to the claimant when there is an approximate balance of evidence. What is not expressed is what that consideration entails or what weight any given piece of evidence is to carry. Those questions were left to the Secretary to determine under 38 U.S.C. § 501(a). The new rule is an exercise of that authority, and it is not in conflict with § 5107(b). The new rule, moreover, does not actually pit one set of evidence against another. Rather, it provides several options for establishing service connection under either a VA examination or a private physician examination.

Petitioners also contend that the new rule is contrary to 38 C.F.R. § 4.125(a), which provides standards used in DSM-IV. Specifically, the regulation states that "[i]f the diagnosis of a mental disorder does not conform to DSM-IV or is not supported by the findings on the examination report, the rating agency shall return the report to the examiner to substantiate the diagnosis." *Id.*

Under DSM-IV, PTSD may be diagnosed where an individual "witnessed" or "experienced" a serious physical threat to themselves or others and the person's response is characterized by "intense fear, helplessness, or horror." DSM-IV at 427-28. This is labeled criterion A. *Id.* at 427. In addition, the person will display symptoms of "persistent reexperiencing of the traumatic event." *Id.* at 424. Those symptoms include, among others, "psychological distress" and "physiological reactivity," and are listed under criterion B. *Id.* at 428. A diagnosis of PTSD requires that the individual meet the requirements of criteria A and B, as well as other requirements under criteria C, D, E, and F. *Id.* at 427-29.

The new rule applies where, among other things, PTSD is alleged as the result of "fear of hostile military or terrorist activity." 38 C.F.R. § 3.304(f)(3). That phrase is defined as involving a response characterized by "a psychological or psycho-physiological state of fear, helplessness, or horror." *Id.*

Petitioners raise two problems with the formulation in the new rule. First, Petitioners contend that that the terms "psychological" and "physiological" are not contemplated under criterion A in DSM-IV and that therefore the rule must fail. The regulation, though, merely merges the elements of criterion A with those of criterion B, where the terms do appear. *Compare* DSM-IV at 428 ("B. The traumatic event is persistently reexperienced in one (or more) of the following ways: . . . (4) intense psychological distress at exposure to internal or external cues . . . . (5) physiological reactivity on exposure to internal or external cues . . . .") *with* 38 C.F.R. § 3.304(f)(3) ("a psychological or psycho-physiological state of fear, helplessness, or horror."). That drafting choice does not render the new rule invalid.

Second, Petitioners contend that even if the complained-of phrase is viewed as incorporating the elements of criterion B, the regulation improperly restricts the range of acceptable symptoms under criterion B. This argument fails as well because the regulation does not necessarily have to be read as restricting the available symptoms of criterion B. In fact, the Secretary stated as much in the final notice. 75 Fed. Reg. at 39,846 ("Because the requirement that a claimed stressor relate to a veteran's fear of hostile military or terrorist activity has no effect on the diagnostic criteria for PTSD, the requirement does not narrow the DSM-IV definition of PTSD."). Even if the regulation were limiting, it would not be in conflict with 38 C.F.R. § 4.125(a). That regulation requires a diagnosis to conform to DSM-IV. A diagnosis of PTSD under the narrower reading of the new rule will necessarily conform to the broad requirements of DSM-IV. Therefore, there is no conflict.

In summary, we have considered petitioners arguments and find that no existing statute or regulation specifically addresses the issue raised in the new rule so as to create a conflict or contradiction.

## B.  The VA Rule Has a Rational Basis

Because Congress has not spoken directly to the issue raised in the rule, we must determine whether the regulation is otherwise permissible. *Chevron*, 467 U.S. at 843. Additionally, under the APA this court must set aside a regulation if we find it to be "arbitrary" or "capricious." 5 U.S.C. § 706(2)(A). Although courts sometimes analyze a regulation under both the second step of *Chevron* and the APA independently, the issues raised will often overlap. *See Shays v. Fed. Election Comm'n*, 414 F.3d 76, 96-97 (D.C. Cir. 2005); *Animal Legal Def. Fund, Inc. v. Glickman*, 204 F.3d 229, 234 (D.C. Cir. 2000). Where, as here,

a regulation will equally stand or fall under either review, a single analysis is appropriate.

A regulation is not arbitrary or capricious if there is a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n. of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). This is a deferential standard of review. Regardless of our views, we must uphold the regulation if there is a rational basis for it on the record. *Balt. Gas & Elec. Co. v. Natural Res. Def. Council, Inc.*, 462 U.S. 87, 105 (1983) ("It is not our task to determine what decision we, as Commissioners, would have reached. Our only task is to determine whether the Commission has considered the relevant factors and articulated a rational connection between the facts and the choice made.").

At the heart of the Petitioners disagreement with the new rule is the distinction between private practitioners and VA associated practitioners. The VA provided reasons for this distinction during the rulemaking, as described above. Petitioners contend that these justifications ring hollow and that no reasonable rationale exists for the rule.

First, Petitioners contend that there is no reasonable basis for the VA's premise that VA practitioners are better trained than private practitioners. If quality assurance is the problem, Petitioners contend, the VA should instead focus on whether a given practitioner is qualified on an individual basis. Additionally, Petitioners question why the special guidance materials used by the VA cannot also be made available to all practitioners.

Second, Petitioners question why, if reviews of examinations are deemed helpful, the VA cannot also review private practitioners' examinations. Petitioners also

question the vagueness of the VA's claimed review process.

Third, Petitioners argue that the Secretary cannot rely on the VA's access to the claims folder as a rational basis for distinguishing between private and VA practitioners. Petitioners note that there are other sources of relevant information concerning the veteran for practitioners to use in examinations. Petitioners point out that the private practitioner also has access to the claims folder through the veteran, who may request his own folder.

Fourth, Petitioners disagree with the VA's view that the distinction between private and VA practitioners is warranted due to allegedly increased consistency. Petitioners note that VA practitioner performance of many more PTSD examinations is a double-edged sword. Rather than resulting in greater quality, the increased number of examinations may, in fact, result in hastier, less thorough examinations.

Petitioners argue that the VA simply cannot categorically distinguish between VA and private practitioners. This belief amounts only to a disagreement with the administrative rulemaking process generally. It is well accepted that administrative agencies may resolve generally applicable factual questions through rulemaking. *See Am. Hosp. Ass'n v. N.L.R.B.*, 499 U.S. 606, 612 (1991) (noting that agencies may "rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority"); *see generally* R. Pierce, Administrative Law Treatise §§ 7.5, 10.5 (5th ed. 2010). That the underlying logic for the rule "may not always be true" is not enough to render the rule invalid. *See Barnhart v. Thomas*, 540 U.S. 20, 29 (2003). As the Supreme Court has noted: "To generalize

is to be imprecise.  Virtually *every* legal (or other) rule has imperfect applications in particular circumstances."  *Id.* (emphasis in original).

To be sure, Petitioners have ably demonstrated areas of weakness in the VA's logic, in particular where the object of the rule is to provide better services to veterans with PTSD.  Indeed, some of the VA's logic, such as the belief that a large number of examinations will increase quality, could lead to the opposite conclusion.  Additionally, Petitioners have proposed alternative methods that the VA could use to ensure that the examinations it receives are of sufficient quality, such as by reviewing the private practitioner's examinations.  Perhaps with the development of data or with more experience on the operation and effect of the new rule, for instance, on quality of care and the incidents of veteran's seeking care, the VA could be convinced that these suggestions would ultimately best serve veterans.

But "[w]hether or not we, if writing on a pristine page, would have reached the same set of conclusions is not the issue."  *Assoc'd Fisheries of Me., Inc. v. Daley*, 127 F.3d 104, 111 (1st Cir. 1997).  The question presented here is whether there is a logical basis for the new rule, and we determine that such a basis exists.  This court's review of the Secretary's rules is deferential, and a "reasoned" analysis is not necessarily an "unassailable" one.  *Ass'n of Pub. Safety Commc'ns Officials Int'l, Inc. v. Fed. Commc'n Comm'n*, 76 F.3d 395, 400 (D.C. Cir. 1996).  We cannot say that the VA's rationale is without a logical basis, or is otherwise arbitrary and capricious.

Based on the foregoing, we find that the new VA rule is a permissible application of statute and is not in violation of law.  We also find that Petitioners' remaining

arguments are without merit. The petition is therefore **DENIED**.