NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**VINCENT CURTIS CONYERS,**

*Petitioner*

**v.**

**SECRETARY OF VETERANS AFFAIRS,**

*Respondent*

_____

2016-2259

_____

Petition for review pursuant to 38 U.S.C. Section 502.

-------------------------------------------------------

**VINCENT CURTIS CONYERS,**

*Petitioner*

**v.**

**SECRETARY OF VETERANS AFFAIRS,**

*Respondent*

_____

2018-1435

_____

Petition for review pursuant to 38 U.S.C. Section 502.

_____

Decided: October 3, 2018

————————————

VINCENT CURTIS CONYERS, Uniondale, NY, pro se.

ALBERT S. IAROSSI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by MARTIN F. HOCKEY, JR., ROBERT EDWARD KIRSCHMAN, JR., CHAD A. READLER; MICHELLE BERNSTEIN, BRIAN D. GRIFFIN, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

————————————

Before NEWMAN, LOURIE, and CLEVENGER, *Circuit Judges.*

PER CURIAM.

Vincent Curtis Conyers petitions this Court under 38 U.S.C. § 502 to review two rules promulgated by the Secretary of Veterans Affairs ("Secretary") and the procedures employed to promulgate those rules.  Specifically, Mr. Conyers asserts that the substance of the revisions effected by the regulations violates several of the Department of Veterans Affairs' ("VA") statutory obligations, and that the Secretary erroneously waived the notice-and-comment and 30-day delayed effective date requirements of the Administrative Procedure Act ("APA").

BACKGROUND

The VA's Vocational Rehabilitation and Counseling Service ("VR&C") previously hired Counseling Psychologists ("CPs") under the Psychology Series (GS-0180).  The job requirements for a CP included:

[a degree with a] major or equivalent in psychology for all specializations . . . [and f]or positions at grades GS-9 and above, satisfactory completion of 2 full academic years of graduate study directly

related to professional work in counseling psychology, or satisfactory completion in an accredited educational institution of all the requirements for a master's degree directly related to counseling psychology is required.

https://www.opm.gov/policy-data-oversight/classification-qualifications/general-schedule-qualification-standards/0100/psychology-series-0180/.

On January 10, 2000, the VA changed the name of the VR&C to the Vocational Rehabilitation and Employment Service ("VR&E") to better reflect the program's focus on employment. Letter from Joseph Thompson, Under Secretary for Benefits, Vet. Benefits Admin., VBA Letter 20-99-90 (Dec. 21, 1999). The VR&E subsequently discontinued the hiring of CPs under the Psychology Series, and began hiring a new workforce under the title of Vocational Rehabilitation Counselors ("VRCs") under the Social Science Series (GS-0101), having concluded that the majority of duties performed by CP officers more closely met the classification standards and complexities associated with VRC officers. Memorandum from Julie A. Murphy, Dir., Office of Human Res., to Jack Kammerer, Dir., VR&E Service (Dec. 28, 2015). The VA then began amending a limited number of regulations to grant VRCs some authority previously reserved for CPs. *See, e.g.*, Vocational Rehabilitation and Employment Program—Initial Evaluations, 72 Fed. Reg. 14,041 (Mar. 26, 2007); Vocational Rehabilitation and Employment Program—Periods of Eligibility, 75 Fed. Reg. 3,165 (Jan. 20, 2010).

In May of 2016, the Secretary promulgated a final rule titled "Technical Corrections—VA Vocational Rehabilitation and Employment Nomenclature Change for Position Title," which amended the remaining regulations that referred to CPs to include a reference to VRCs as well. 81 Fed. Reg. 26,130 (May 2, 2016) ("May 2016 Rule"). In essence, the regulation equated the two posi-

tions in terms of decision-making authority within the VR&E.

In promulgating the May 2016 Rule, the Secretary based the decision, at least in part, on two non-public documents—a December 2003 Performance Plan and a June 2004 VA Office of Field Operations Letter 20F-11-09—which allegedly "described how the job duties and qualifications for a CP and VRC were the same." *Id.* Thus, the Secretary considered the rule a mere change in position title, and found it exempt from the requirements for notice-and-comment and 30-day delayed effective date pursuant to 5 U.S.C. §§ 553(b)(3) and (d)(3). *Id.*

Mr. Conyers, a service-connected disabled veteran, petitioned this Court, challenging the May 2016 Rule under 38 U.S.C. § 502. *Conyers v. Sec'y of Veterans Affairs*, No. 16-2259, ECF No. 1 (June 28, 2016) ("*Conyers I*"). Specifically, Mr. Conyers questioned the existence of the December 2003 Performance Plan, without which the Secretary would not have had a basis to invoke §§ 553(b)(3) or (d)(3). Upon searching for the December 2003 Performance Plan to no avail, and before filing a brief in response to Mr. Conyers' opening brief, the Secretary asked for a stay to publish a revised rule addressing the shortcomings of the May 2016 Rule, *Conyers I*, ECF No. 25 (Feb. 10, 2017), which this Court granted, *Conyers I*, ECF No. 29 (Mar. 21, 2017).

Eight months later, the Secretary published a revised interim rule. VA Vocational Rehabilitation and Employment Nomenclature Change for Position Title–Revision, 82 Fed. Reg. 54,295 (Nov. 17, 2017) ("November 2017 Revised Rule"). In it, the Secretary acknowledged that the December 2003 Performance Plan referenced in the May 2016 Rule was actually dated July 1, 2004, but also admitted that the Plan did not, in fact, state that the job duties and qualifications for a CP and a VRC were the same. *Id.* Nonetheless, the Secretary adopted all of the

amendments provided in May 2016 Rule. *Id.* Instead of relying on the Performance Plan, however, the Secretary detailed the job requirements of VRCs, which demanded:

> a master's degree in rehabilitation counseling, including an internship, or in counseling psychology, or a related field, including at least 30 semester hours of course work in the foundations of rehabilitation counseling, human growth and development, counseling theories and techniques, vocational assessment, career development, job placement, case management, or medical/psychosocial aspects of disability[; and]

> total graduate study [that] must have included or been supplemented by a supervised internship or successful professional experience following the completion of the master's degree.

*Id.* at 54,296; *see also* VA Handbook 5005/6 Part II, Appx. F2, 1 (June 3, 2004). The Secretary concluded that such "requirements are comparable to the requirements applicable to CP positions but are more accurately aligned with the needs of the VR&E program. . . ." 82 Fed. Reg. at 54,296.

Mr. Conyers petitioned this Court a second time, challenging the November 2017 Revised Rule under 38 U.S.C. § 502. *Conyers v. Sec'y of Veterans Affairs*, No. 18-1435, ECF No. 1 ("*Conyers II*"). Upon lifting the stay in *Conyers I*, the two petitions have been consolidated for the purposes of this opinion.

## DISCUSSION

This Court has exclusive jurisdiction to review rulemaking actions taken by the Secretary to which 5 U.S.C. §§ 552(a)(1) or 553 refer. 38 U.S.C. § 502. Section 552(a)(1) refers to agency actions that must be published in the Federal Register, including "each amendment, revision, or repeal" of "rules of procedure" or "substantive

rules of general applicability adopted as authorized by law." 5 U.S.C. §§ 552(a)(1)(C)–(E); *Disabled Am. Veterans v. Gober*, 234 F.3d 682, 688 (Fed. Cir. 2000). Section 553 refers to agency rulemaking that must comply with notice-and-comment procedures under the APA. 5 U.S.C. § 553; *Disabled Am. Veterans*, 234 F.3d at 688. "Thus, under 38 U.S.C. § 502, we may review the VA's procedural and substantive rules, any amendments to those rules, and the process in which those rules are made or amended." *Id.* at 688–89.

We review any petitions under § 502 according to the standards set forth in the APA. 5 U.S.C. §§ 701–706; *Nyeholt v. Sec'y of Veterans Affairs*, 298 F.3d 1350, 1355 (Fed. Cir. 2002). Under the APA, this Court will "hold unlawful and set aside agency action" only if the action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Mortg. Investors Corp. v. Gober*, 220 F.3d 1375, 1378 (Fed. Cir. 2000). "This review is 'highly deferential' to the actions of the agency," *Disabled Am. Veterans*, 234 F.3d at 691 (citing *LeFevre v. Sec'y, Dep't of Veterans Affairs*, 66 F.3d 1191, 1199 (Fed. Cir. 1995)), and a rulemaking action is not arbitrary and capricious if there is a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citation and internal quotation marks omitted); *Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*, 669 F.3d 1340, 1348 (Fed. Cir. 2012).

A

The Government argues that this Court lacks jurisdiction to review the rules at issue based on the APA's "personnel exception" under 5 U.S.C. § 553(a)(2). The personnel exception disposes of the requirements set forth in 5 U.S.C. § 553(b)–(d), including notice-and-comment, for "matter[s] relating to agency management or personnel." 5 U.S.C. § 553(a)(2). Such matters may include

determinations of employee bonuses, the promulgation of a personnel manual or handbook, and hiring practices. 5 U.S.C. § 553(a)(2); *see Tunik v. Merit Sys. Prot. Bd.*, 407 F.3d 1326, 1342–43 (Fed. Cir. 2005). However, the personnel exception is narrow, *Joseph v. U.S. Civil Serv. Comm'n*, 554 F.2d 1140, 1153 (D.C. Cir. 1977), and does not apply "where a proposed rule substantially affects parties outside an agency and implicates broad public concerns." *Tunik*, 407 F.3d at 1344 (quoting *Stewart v. Smith*, 673 F.2d 485, 505 (D.C. Cir. 1982) (Wright, J., dissenting)).

According to the Government, the rules at issue do nothing more than "add a reference to VRCs where regulations referenced a CP," and that such action falls squarely within the personnel exception. *Conyers II*, ECF. No. 20 at 12. As a result, the Government argues that the Secretary was exempt from the requirements of § 553 and, by extension, the rules are unreviewable under 38 U.S.C. § 502.

For support, the Government relies upon *Disabled American Veterans v. Secretary of Veterans Affairs*, where this Court found that it lacked jurisdiction to review the promulgation of the VA's Adjudication Procedures Manual ("M21-1 Manual") under § 553. 859 F.3d 1072 (Fed. Cir. 2017) ("*DAV*"). But in that case, this Court found the M21-1 Manual unreviewable under § 502 not only because it fell within the personnel exception of § 553, but also because the production of an administrative staff manual was expressly exempt from the publication requirements of § 552(a)(1) under § 552(a)(2). *See DAV*, 859 F.3d at 1075 ("Section 502's express exclusion of agency actions subject to § 552(a)(2) renders the M21-1 Manual beyond our § 502 jurisdiction . . . ."). Here, we are dealing with a rule, not a manual. And even if the personnel exception applied in this case—exempting the rules at issue from the requirements of § 553—the rules are still subject to

review by this Court under § 552(a)(1). 38 U.S.C. § 502; 5 U.S.C. §§ 552 (a)(1)(C)–(D).

But the Government has also failed to show that the personnel exception applies in this case. The Government argues that the rules at issue do not substantially affect outside parties or implicate broad public concern. And yet the Government admits that "[t]hese amendments allow both CPs and VRCs to make the same determinations and provide the same services." *Conyers II*, ECF. No. 20 at 12. In other words, the VA is authorizing a new group of personnel under the title of VRCs to render services and make determinations related to veterans' benefits that were previously reserved for CPs.

The extension of such authority is not merely a matter of hiring practices or position nomenclature, and will substantially affect outside individuals—specifically veterans who receive services or are subject to determinations made by VRCs instead of CP officers. *Compare Stewart v. Smith*, 673 F.2d at 487 (concluding that the personnel exception applied to a Bureau of Prisons' hiring policy of not considering for employment anyone over the age of 34), *with Joseph v. United States Civil Serv. Comm'n*, 554 F.2d 1140, 1153 n. 23 (D.C. Cir. 1977) (concluding that the personnel exception does not apply to a rule exempting personnel from some of the prohibitions of the Hatch Act for local elections in the District of Columbia because outsiders will be substantially affected). Thus, the personnel exception of § 553 does not apply to the rules at issue, and we have jurisdiction to review the Secretary's action under § 502.

B

Mr. Conyers argues that the rules at issue violate federal law in both substance and procedure—that the rules fail to meet the VA's statutory obligations, and the promulgation of the rules violated the APA.

First, Mr. Conyers argues that he had shown in his opening brief in *Conyers I* serious deficiencies in the qualifications, duties, and responsibilities of VRCs compared to CPs. Mr. Conyers allegedly highlighted those deficiencies through OPM classification standards, training matrices, core competencies, certification and licensure requirements, and methodological practices. *Conyers I*, ECF No. 14 at 20–25. But this case is not about hiring qualifications; the Secretary has the discretion to "establish such qualifications for personnel providing evaluation and rehabilitation services." 38 U.S.C. § 3118(c). Nor is this case about whether VRCs are identical to CPs in terms of education, training, or quality. What this case concerns is whether VRCs, in the performance of the duties assigned to them by the rules at issue, meet the VA's statutory obligations to provide rehabilitation services to veterans. In this regard, Mr. Conyers fails to show that the differences in hiring standards violate specific laws that may impact the lawfulness of the rules at issue.

The only substantive laws that Mr. Conyers alleges the rules at issue violate are 29 U.S.C. § 721(a)(7)(B)(ii) and 5 U.S.C. § 5105(b). Specifically, Mr. Conyers provides an example that a core competency of a CP is to administer and interpret psychometric tests, but the job requirements of a VRC "raise[] doubts whether a particular VRC is actually trained and competent in administrating and interpreting psychometric tests . . . [and may] violate the scope of practice inherent to his/her State license or certification." *Conyers II*, ECF No. 10 at 23 (Apr. 20, 2018).

But § 721—a part of the Rehabilitation Act of 1973—does not address the necessity for psychometric tests as part of the VA's statutory obligations to provide rehabilitation services. Instead, the statute details only the requirements for formal state plans that must be produced to receive federal funds for state rehabilitation

programs. *See* 29 U.S.C. § 721(a)(1). Section 721—and subsection (a)(7)(B)(ii) in particular—imposes no directive upon the VA in relation to its hiring standards and practices. *See* 29 U.S.C. § 721(a)(7)(B) (noting that "the state plan shall . . . (B) set forth policies and procedures relating to the establishment and maintenance of standards to ensure that personnel . . . are appropriately and adequately prepared and trained . . . ."). And even if such a conflict exists between a VRC's duties in that capacity and state requirements to provide rehabilitative services, Mr. Conyers has proffered no specific instances of fact or violations of law necessary to determine that the rules at issue are "not in accordance with law." 5 U.S.C. § 706(2)(A). We cannot base our conclusions on hypotheticals or argument alone.

Further, while Mr. Conyers argues the VA must consult with OPM before making hiring changes, § 5105 merely grants OPM the discretion to "revise, supplement, or abolish existing standards, or prepare new standards, so that, as nearly as may be practicable, positions existing at any given time will be covered by current published standards." 5 U.S.C. § 5105(b). In other words, § 5105 places no requirement on the VA either.

Nor has Mr. Conyers shown that the Secretary's actions in promulgating the rules at issue are arbitrary and capricious. An agency's action may be considered arbitrary and capricious if:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43. Mr. Conyers alleges that the rules at issue are arbitrary and capricious

because the Secretary improperly conflated the CP and VRC positions, provided an insufficient factual record, and justified the rulemaking as resolving confusion which the Secretary himself caused. But Mr. Conyers' arguments miss the mark.

Here, the facts sufficiently support the Secretary's decision to grant VRCs authority previously exercised by CPs. The Secretary addressed in detail how VRCs are sufficiently qualified to provide rehabilitative services to meet the VA's statutory obligations. 82 Fed. Reg. at 54,296. Further, the Secretary explained that the VR&E, whether by its own doing or because of the limitations of human resources' hiring codes, faced a shortage of CPs and an abundance of VRCs. *See id.* at 54,297 (noting that the VR&E currently employs only 10 CPs while providing services for nearly 200,000 veterans). And the documents cited in the November 2017 Revised Rule support the Secretary's position and rationale. Thus, the Secretary has shown a rational connection between the facts found and the choice made, and Mr. Conyers has failed to show that the Secretary's actions were arbitrary and capricious.

Because Mr. Conyers has not sufficiently shown a violation of federal law or that the Secretary's actions were arbitrary and capricious, we cannot now say that the Secretary was acting beyond the scope of his authority by promulgating the November 2017 Revised Rule with an immediate effective date. According to § 553, the Secretary may circumvent notice-and-comment and the delayed effective date if the agency finds "good cause" to do so. *See* 5 U.S.C. § 553(b)(3)(B) (excepting an agency action from notice-and-comment when "the agency for good cause finds . . . that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest."); *see also* 5 U.S.C. § 553(d)(3) (excepting an agency from the 30-day delayed effective date requirement when "provided by the agency for good cause found and published with the rule").

The November 2017 Revised Rule provided a 30-day notice-and-comment period, and therefore any arguments related to § 553(b)(3)(B) are moot. And while the Secretary was still required to show good cause to waive the typical 30-day delayed effective date, we find that the Secretary has shown such cause. Given the extraordinary shortage of CPs and the fact that at least some cases handled by VRCs were being remanded because the regulations permitted only CPs to make certain determinations, *see e.g. (Title Redacted by Agency)*, Bd. Vet. App. 1529855 (July 13, 2015), the Secretary had sufficiently good cause to expedite implementation of the rule. Thus, Mr. Conyers has failed to show any substantive or procedural deficiency with the rules at issue.

**AFFIRMED**

COSTS

No costs.