# United States Court of Appeals for the Federal Circuit

---

**GERALDO P. ORTIZ,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2020-1911

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 19-70, Judge Michael P. Allen.

---

Decided: July 28, 2021

---

KENNETH M. CARPENTER, Law Offices of Carpenter Chartered, Topeka, KS, argued for claimant-appellant.

ASHLEY AKERS, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by JEFFREY B. CLARK, ELIZABETH MARIE HOSFORD, ROBERT EDWARD KIRSCHMAN, JR.

---

Before NEWMAN, TARANTO, and CHEN, *Circuit Judges*.

TARANTO, *Circuit Judge.*

The Department of Veterans Affairs (VA) awarded veteran Geraldo Ortiz benefits for a service-connected disability based on posttraumatic stress disorder (PTSD), acting pursuant to a regulatory change that lightened his previous evidentiary burden. The dispute before us concerns the starting date for the benefits awarded, *i.e.*, the effective date of the award. We conclude that the regulatory change that enabled Mr. Ortiz to obtain the benefits was a "liberalizing" one, entitling Mr. Ortiz to the earlier effective date, and hence the larger award, that he seeks.

Mr. Ortiz had first claimed service-connected disability benefits based on PTSD, under 38 U.S.C. § 1110, in 1997. But VA denied the claim because Mr. Ortiz did not provide corroborating evidence, as required by the PTSD regulation, 38 C.F.R. § 3.304(f), that the events identified as leading to his PTSD occurred in his military service. That decision became final. Years later, in 2010, the Secretary of Veterans Affairs amended § 3.304(f) by adding what is now subsection (f)(3) to state an exception to the corroborating-evidence requirement in circumstances like those of Mr. Ortiz. On May 22, 2012, more than a year after the regulatory change took effect, Mr. Ortiz moved to reopen his claim, invoking the newly lightened proof requirement. Within months, VA reopened his claim and granted the claim, rating him 100 percent disabled and making the benefits effective as of May 22, 2012, the date VA received the request to reopen.

Mr. Ortiz contended that the effective date should have been one year earlier (May 22, 2011). For that contention, he relied on 38 C.F.R. § 3.114(a), which implements 38 U.S.C. § 5110(g) and provides that when compensation "is awarded or increased pursuant to a liberalizing law, or a liberalizing VA issue approved by the Secretary or by the Secretary's direction" and the "claim [for compensation] is reviewed at the request of the claimant more than 1 year

after the effective date of the law or VA issue," the effective date is "1 year prior to the date of receipt of such request." 38 C.F.R. § 3.114(a)(3). Mr. Ortiz argued that § 3.304(f)(3) was a "liberalizing" law or VA issue, entitling him to the extra year of benefits. The Board of Veterans' Appeals and then the Court of Appeals for Veterans Claims (Veterans Court) rejected his request for an earlier effective date. While accepting that Mr. Ortiz's claim was granted "pursuant to" § 3.304(f)(3), they concluded that § 3.304(f)(3) was not a "liberalizing" measure.

We reverse. We conclude that the addition of § 3.304(f)(3) in 2010 was "liberalizing" under § 3.114(a). It is sufficient to come within § 3.114(a)'s "liberalizing" category that § 3.304(f)(3) reduced a veteran's affirmative burden of production to establish an element of entitlement to compensation. In these circumstances, the correct effective date for Mr. Ortiz's benefits is May 22, 2011, rather than May 22, 2012.[1]

I

A

The precedents that the parties principally debate are *Spencer v. Brown*, 17 F.3d 368 (Fed. Cir. 1994), and *Routen v. West*, 142 F.3d 1434 (Fed. Cir. 1998). In those decisions, this court did not directly interpret and apply the effective-date "liberalizing" regulation at issue here, 38 C.F.R. § 3.114(a), to answer an effective-date question, as no such question was presented. Rather, the court relied on 38 U.S.C. § 5110(g) and 38 C.F.R. § 3.114(a) to draw an inference about a circumstance in which a new original claim is not barred by the otherwise-governing statutory finality

---

[1]    Unless noted otherwise, all citations are to provisions as they existed before the Veterans Appeals Improvement and Modernization Act of 2017, Pub. L. No. 115–55, 131 Stat. 1105, and the regulations implementing that Act.

protections that attach to rejection of an earlier claim. It is useful, therefore, to begin with a summary of the statutory and regulatory provisions that provide a general rule of finality for claim-rejecting VA decisions but allow for exceptions, including the exception recognized in *Spencer* and *Routen*.

Statutes and regulations governing veterans benefits expressly state general rules of finality for VA decisions. That is so for a decision by a VA regional office (or agency of original jurisdiction) unless timely appealed to the Board. *See* 38 U.S.C. § 7105(c) ("If no notice of disagreement is filed in accordance with this chapter within the prescribed period, the action or determination shall become final and the claim will not thereafter be reopened or allowed, except as may otherwise be provided by regulations not inconsistent with this title."); 38 C.F.R. §§ 20.1104, 3.104(a), 3.2600. And it is also so for a Board decision unless timely appealed to the Veterans Court. *See* 38 U.S.C. § 7104(b) ("Except as provided in section 5108 of this title, when a claim is disallowed by the Board, the claim may not thereafter be reopened and allowed and a claim based upon the same factual basis may not be considered."); 38 C.F.R. § 20.1100.

As the above-quoted statutes make clear, however, exceptions are authorized. One exception, not invoked in the present case, is for "clear and unmistakable error" in the original decision. 38 U.S.C. §§ 5109A(a), 7111; *see also* 38 C.F.R. § 20.1400. A decision reversing or revising the earlier decision on that basis "has the same effect as if the decision had been made on the date of the prior decision," 38 U.S.C. §§ 5109A, 7111, so the effective date of an award of benefits previously "denied due to clear and unmistakable error" is as early as "the veteran's filing of the original claim," *Sears v. Principi*, 349 F.3d 1326, 1331 (Fed. Cir. 2003); *see also* 38 C.F.R. § 3.400(k). A second exception, which was invoked in the present case, is for "reopening" based on "new and material evidence." 38 U.S.C. § 5108;

38 C.F.R. § 3.156(a).[2] In general, the earliest effective date for an award on a reopened claim is the date of the request for reopening, not the date of the original claim. *See Sears*, 349 F.3d at 1331; 38 C.F.R. § 3.400(q)–(r).[3]

This court concluded in *Spencer* that, in *Routen*'s words, there is also a "third" path around an otherwise-final claim rejection—namely, a new original claim—if certain statutory or agency-adopted changes have been made since the earlier rejection. *Routen*, 142 F.3d at 1438, 1442. The court in *Spencer* quoted with approval the Veterans Court's reasoning:

> When a provision of law or regulation creates a new basis of entitlement to benefits, as through liberalization of the requirements for entitlement to a benefit, an applicant's claim of entitlement under such law or regulation is a claim separate and distinct from a claim previously and finally denied

---

[2] Section 5108 now is titled "Supplemental claims," uses the term "readjudicate" rather than "reopen," and requires "new and *relevant*" instead of "new and *material*" evidence. 38 U.S.C. § 5108(a) ("In General.—If new and relevant evidence is presented or secured with respect to a supplemental claim, the Secretary shall readjudicate the claim taking into consideration all of the evidence of record."); *see also* 38 C.F.R. § 3.156(a) (implementing § 5108).

[3] A regulation provides for different effective-date treatment in defined circumstances when a claim is reopened and reconsidered based on "relevant official service department records that existed and had not been associated with the claims file when VA first decided the claim." 38 C.F.R. § 3.156(c)(1). In that situation, an award may have an effective date as early as "the date VA received the previously decided claim." *Id.* § 3.156(c)(3); *see also Blubaugh v. McDonald*, 773 F.3d 1310, 1313 (Fed. Cir. 2014); *Loyd v. Shulkin*, 682 F. App'x 906, 909 (Fed. Cir. 2017).

> prior to the liberalizing law or regulation. The applicant's later claim, asserting rights which did not exist at the time of the prior claim, is necessarily a different claim.

*Spencer*, 17 F.3d at 372 (quoting *Spencer v. Brown*, 4 Vet. App. 283, 288–89 (1993) (*Spencer CAVC*); alteration and internal quotation marks omitted). This court agreed with the Veterans Court that the finality protection of § 7104(b) "'does not preclude de novo adjudication of a claim, on essentially the same facts as a previously and finally denied claim, where an intervening and substantive change in law or regulation created a new basis for entitlement to a benefit.'" *Id.* (quoting *Spencer CAVC*, 4 Vet. App. at 289).

In ruling that the statute allows a new original claim based on certain changes of law, notwithstanding the otherwise-prescribed finality of an earlier claim's rejection, this court and the Veterans Court in *Spencer*, as well as this court in *Routen*, relied on what they found to be a necessary implication of a statutory effective-date provision, 38 U.S.C. § 5110(g), implemented by 38 C.F.R. § 3.114(a). *Routen*, 142 F.3d at 1441 (relying on statute and regulation); *Spencer*, 17 F.3d at 371 (relying on statute); *Spencer CAVC*, 4 Vet. App. at 287–89 (relying on statute and regulation). The decisions in those cases do not directly apply those provisions, which merely prescribe an effective date for certain awards of compensation; there was no effective-date issue in those cases because there were no awards in those cases at all. Rather, the courts in those cases discerned in the effective-date statute (and regulation) an implied presupposition that a new original claim must sometimes be available, modifying the otherwise-applicable statutory (and regulatory) guarantees of finality of an earlier decision. The court in *Routen* itself stressed that very difference—between direct application of the effective-date provisions (which was not at issue) and the scope of an implied statutory modification to allow a new original claim (which was). *See* 142 F.3d at 1441.

B

Unlike *Spencer* and *Routen*, the present case involves an effective-date question requiring direct application of the regulation adopted to implement the statute.

Section 5110(g), one of the subsections of the statutory provision titled "Effective dates of awards," dates back to 1962. Addressing a change-of-law situation, it provides that, "[s]ubject to the provisions of section 5101" (concerning "claims and forms"),

> where compensation . . . is awarded or increased pursuant to any Act or administrative issue, the effective date of such award or increase shall be fixed in accordance with the facts found but shall not be earlier than the effective date of the Act or administrative issue. In no event shall such award or increase be retroactive for more than one year from the date of application therefor or the date of administrative determination of entitlement, whichever is earlier.

38 U.S.C. § 5110(g). The language is not limited to *recon*sideration of a claim, but reaches an original claim. And it applies not just where "compensation . . . is awarded" (where no compensation had previously been awarded) but also where "compensation . . . is . . . increased" (where, for example, a rating is increased).

A regulation, also dating back to 1962, implements that statutory subsection. Under 38 C.F.R. § 3.114, titled "Change of law or Department of Veterans Affairs issue," subsection (a) provides:

> (a) *Effective date of award.* Where . . . compensation . . . is awarded or increased pursuant to a liberalizing law, or a liberalizing VA issue approved by the Secretary or by the Secretary's direction, the effective date of such award or increase shall be fixed in accordance with the facts found, but shall

not be earlier than the effective date of the act or administrative issue. Where . . . compensation . . . is awarded or increased pursuant to a liberalizing law or VA issue which became effective on or after the date of its enactment or issuance, in order for a claimant to be eligible for a retroactive payment under the provisions of this paragraph the evidence must show that the claimant met all eligibility criteria for the liberalized benefit on the effective date of the liberalizing law or VA issue and that such eligibility existed continuously from that date to the date of claim or administrative determination of entitlement. The provisions of this paragraph are applicable to original and reopened claims as well as claims for increase.

(1) If a claim is reviewed on the initiative of VA within 1 year from the effective date of the law or VA issue, or at the request of a claimant received within 1 year from that date, benefits may be authorized from the effective date of the law or VA issue.

(2) If a claim is reviewed on the initiative of VA more than 1 year after the effective date of the law or VA issue, benefits may be authorized for a period of 1 year prior to the date of administrative determination of entitlement.

(3) If a claim is reviewed at the request of the claimant more than 1 year after the effective date of the law or VA issue, benefits may be authorized for a period of 1 year prior to the date of receipt of such request.

38 C.F.R. § 3.114(a).  The regulation expressly applies to "original and reopened claims as well as claims for increase."  *Id.*[4]

There is dispute about what the consequences are for the effective date of an award when, on a claim that has been reopened, the award is made "pursuant to" a "liberalizing" change.  In that situation, the award's effective date may not be earlier than the effective date of the underlying change, but it may be as early as one year before the request based on the change was made.  *See McCay v. Brown*, 106 F.3d 1577, 1581 (Fed. Cir. 1997).  The issue in this case is whether § 3.114(a) applies to a particular regulatory change.

C

Mr. Ortiz served during the Vietnam era, a "period of war," 38 C.F.R. § 3.2(f), within the meaning of 38 U.S.C. § 1110, which provides for compensation for service-connected disability—specifically, "[f]or disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, or air service, during a period of war"—subject to exceptions that do not apply here.  It is undisputed before us that, having earlier denied Mr. Ortiz's claim for disability benefits based on PTSD, VA reopened Mr. Ortiz's claim for such benefits and granted the claim in 2012 and that VA did so pursuant to the 2010 addition of what is now subsection (f)(3) to 38 C.F.R. § 3.304.  There is no dispute about the propriety of the reopening or the grant.  The only question presented concerns the proper effective date under 38 C.F.R. § 3.114(a), and the only issue in dispute about

---

[4]    Amended to implement the statutory changes from the Modernization Act, the regulation now reads "original and *supplemental* claims as well as claims for increase."

the applicability of § 3.114(a) is whether the 2010 adoption of what is now § 3.304(f)(3) was a "liberalizing" change under § 3.114(a). The proper resolution depends on the regulations governing PTSD-based claims for service-connected disability benefits under 38 U.S.C. § 1110.

To secure benefits under § 1110 (or under § 1131, which governs peacetime service), a veteran generally must "satisfy a three-element test: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service—the so-called 'nexus' requirement." *Walker v. Shinseki*, 708 F.3d 1331, 1333 (Fed. Cir. 2013). Congress prescribed in 38 U.S.C. § 1154(a) that the Secretary must provide, in regulations governing service connection, for consideration of various facts and types of evidence. For "any veteran who engaged in combat with the enemy in active service," Congress added, in § 1154(b), that "the Secretary shall accept as sufficient proof of service-connection . . . satisfactory lay or other evidence of service incurrence or aggravation of such injury or disease, if consistent with the circumstances, conditions, or hardships of such service . . . . Service-connection of such injury or disease may be rebutted by clear and convincing evidence to the contrary."

Exercising his rulemaking authority under 38 U.S.C. § 501(a), the Secretary in 1993 promulgated 38 C.F.R. § 3.304(f) to implement 38 U.S.C. § 1154 for claims based on PTSD. Direct Service Connection (Post-traumatic Stress Disorder), 58 Fed. Reg. 29,109 (May 19, 1993); *see also Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*, 669 F.3d 1340, 1343 (Fed. Cir. 2012) (*NOVA*) ("The Secretary has the authority to issue regulations which establish the requirements for veterans to qualify for service-connected PTSD injuries."). At the time of Mr. Ortiz's first filing for PTSD-based benefits in 1997, § 3.304(f) generally provided that a grant of benefits based

on "post-traumatic stress disorder requires medical evidence establishing a clear diagnosis of the condition, *credible supporting evidence that the claimed inservice stressor actually occurred*, and a link, established by medical evidence, between current symptomatology and the claimed inservice stressor."  38 C.F.R. § 3.304(f) (1997) (emphasis added).[5]

Over time, VA promulgated exceptions to the general requirements.  After Mr. Ortiz's original claim was finally decided, but a couple of years before Mr. Ortiz moved to reopen his claim, the Secretary further implemented 38 U.S.C. § 1154 and promulgated an additional exception—what is now 38 C.F.R. § 3.304(f)(3)—to the general requirements for a claim of entitlement based on PTSD.  *See* Stressor Determinations for Posttraumatic Stress Disorder, 74 Fed. Reg. 42,617 (Aug. 24, 2009) (Proposed Rule); 75 Fed. Reg. 39,843 (July 13, 2010) (Final Rule).  The effective date of the new subsection (f)(3) was July 12, 2010.  Final Rule, 75 Fed. Reg. at 39,843.  Subsection (f)(3) provides in relevant part:

---

[5]    In 1999, VA amended the regulation by reordering the three requirements and clarifying the "type of medical evidence required to establish service connection," but VA maintained the corroboration requirement.  Direct Service Connection (Post-Traumatic Stress Disorder), 64 Fed. Reg. 32,807, 32,807 (June 18, 1999).  The amended § 3.304(f) stated: "Service connection for post-traumatic stress disorder requires medical evidence diagnosing the condition in accordance with [38 C.F.R.] § 4.125(a) of this chapter; a link, established by medical evidence, between current symptoms and an in-service stressor; and *credible supporting evidence that the claimed in-service stressor occurred*." 38 C.F.R. § 3.304(f) (1999) (emphasis added); *see also NOVA*, 669 F.3d at 1343; *AZ v. Shinseki*, 731 F.3d 1303, 1310 (Fed. Cir. 2013).

> If a stressor claimed by a veteran is related to the veteran's fear of hostile military or terrorist activity and a VA psychiatrist or psychologist, or a psychiatrist or psychologist with whom VA has contracted, confirms that the claimed stressor is adequate to support a diagnosis of posttraumatic stress disorder and that the veteran's symptoms are related to the claimed stressor, in the absence of clear and convincing evidence to the contrary, and provided the claimed stressor is consistent with the places, types, and circumstances of the veteran's service, *the veteran's lay testimony alone may establish the occurrence of the claimed in-service stressor. . . .*

38 C.F.R. § 3.304(f)(3) (emphasis added).[6]

As we have explained, § 3.304(f)(3) "grants veterans a special exception to th[e] normal evidentiary burden by permitting them to rely on their lay testimony alone without corroborating evidence to prove that their claimed in-service PTSD stressor occurred." *Hall v. Shinseki*, 717 F.3d 1369, 1371 (Fed. Cir. 2013); *see also NOVA*, 669 F.3d at 1343–44 ("VA proposed a rule on August 24, 2009, creating an additional situation where a veteran could establish PTSD service-connection without supporting evidence regarding the claimed in-service stressor."). This exception to the normal corroborating-evidence requirement applies "if three [pre]conditions are satisfied: (1) a VA psychiatrist or psychologist 'confirms that the claimed stressor is adequate to support a diagnosis of post-traumatic stress disorder and that the veteran's symptoms are related to the

---

6    Before the 2010 amendment, 38 C.F.R. § 3.304(f) had four exceptions enumerated as paragraphs (1)–(4). The 2010 amendment redesignated what were paragraphs (3) and (4) as paragraphs (4) and (5) and added "new paragraph (f)(3)." Final Rule, 75 Fed. Reg. at 39,852.

claimed stressor'; (2) the VA psychiatrist or psychologist's findings are not contradicted by 'clear and convincing evidence'; and (3) 'the claimed stressor is consistent with the places, types, and circumstances of the veteran's service.'" *Sanchez-Navarro v. McDonald*, 774 F.3d 1380, 1384 (Fed. Cir. 2014) (quoting 38 C.F.R. § 3.304(f)(3)).

The change made a decisive difference for Mr. Ortiz. VA denied his 1997 claim, despite a VA medical examiner's opinion stating a PTSD diagnosis tied to Vietnam combat, because Mr. Ortiz failed to present corroborating evidence of the in-service stressor. J.A. 17 (stating that "the claimed in-service stressor(s) cannot be confirmed"). That decision became final in 1999, but when VA received Mr. Ortiz's motion to reopen the claim on May 22, 2012, VA quickly reopened the claim and granted it, with a 100 percent disability rating. J.A. 30–36 (September 26, 2012 decision). There is no dispute before us about whether "new and material evidence" was present, justifying the reopening, or about Mr. Ortiz's entitlement to service-connected disability benefits based on PTSD. And VA itself stated that it granted the claim "because [it] conceded that [Mr. Ortiz] experienced fear due to hostile military or terrorist activity while serving in Vietnam and because the VA examiner related [his] diagnosis of PTSD to that fear," which was now enough because new § 3.304(f)(3) "relaxed the evidentiary standard for establishing the required in-service stressor" for claims based on PTSD. J.A. 40; *see also* J.A. 40 (New § 3.304(f)(3) "eliminated the requirement for corroborating evidence."); J.A. 42 ("Easing Standard").

## D

The only dispute before us is whether § 3.304(f)(3) was a "liberalizing" change under § 3.114(a). The regional office concluded that it was not. J.A. 40, 103. The Board reached the same conclusion, after "acknowledg[ing] that the Veteran's service connection claim for PTSD was ultimately granted pursuant to an amended PTSD regulation."

J.A. 113; *see also* J.A. 110–14.  The Board relied on the Veterans Court's holding in *Foreman v. Shulkin*, 29 Vet. App. 146 (2018), that § 3.304(f)(3) was not "liberalizing" under § 3.114(a).  *See* J.A. 114.  The Veterans Court then affirmed: It accepted the Board's determination that Mr. Ortiz's "claim was granted based on [the 2010] change in VA's regulations addressing establishing an in-service stressor," but it concluded that it was bound by its *Foreman* precedent.  *Ortiz v. Wilkie*, No. 19-0070, 2020 WL 1173715, at *1–2 (Vet. App. Mar. 12, 2020).

Mr. Ortiz timely appealed.  We have jurisdiction under 38 U.S.C. § 7292 to review the Veterans Court's ruling because whether § 3.304(f)(3) made a "liberalizing" change within the meaning of § 3.114(a) presents a question of law.  *See Spencer*, 17 F.3d at 372.

## II

We conclude that the addition of § 3.304(f)(3) made a "liberalizing" change under § 3.114(a).  We decide the issue without applying the deference doctrine of *Auer v. Robbins*, 519 U.S. 452 (1997), as clarified in *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019).  Although we doubt that the doctrine would apply to the question presented, we need not decide the doctrine's applicability, or whether our answer to the legal question is a matter of unambiguous meaning (making the doctrine immaterial), because the Secretary does not invoke the doctrine.  *Cf. HollyFrontier Cheyenne Refining, LLC v. Renewable Fuels Ass'n*, 141 S. Ct. 2172, 2180 (2021) (declining to apply statutory-interpretation doctrine of *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), where not invoked by the government); *County of Maui v. Hawaii Wildlife Fund*, 140 S. Ct. 1462, 1474 (2020) (similar); *see Massachusetts Mut. Life Ins. Co. v. United States*, 782 F.3d 1354, 1369–70 (Fed. Cir. 2015) (*Auer* deference forfeitable).

A

We generally must "interpret the words consistent with their ordinary meaning at the time" of adoption. *Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2070 (2018) (cleaned up). The Secretary agrees that, in general, "to 'liberalize' means to make policies or laws less strict." Secretary Response Br. at 17 (citing Black's Law Dictionary (11th ed. 2019)). This general meaning was common at the time of § 3.114(a)'s promulgation and the 2010 amendment to § 3.304, and it remains common now. *See*, *e.g.*, Webster's Third New International Dictionary 1303 (1961) ("to make less strict or rigorous"); The American College Dictionary 702 (1962) ("to make or become more liberal," *i.e.*, "not strict or rigorous"); The American Heritage Dictionary 727 (2d College ed. 1982) (similar); Oxford English Dictionary (2d ed. 1989) ("to free from narrowness" and "[t]o remove restrictions on"); The American Heritage Dictionary of the English Language 1036–37 (3d ed. 1992) ("To make liberal or more liberal," *i.e.*, "[n]ot strict"); Black's Law Dictionary 1057 (10th ed. 2009) ("To make a system, laws, policies, or moral attitudes less strict, censorious, and rhadamanthine."); Oxford English Dictionary (3d ed. 2010) ("to free from narrowness or strictness; to relax"); *see also*, *e.g.*, S. Rep. No. 87-2042, at 1 (1962) (using "liberalizing" in this sense); H. Rep. No. 87-2123, at 1 (1962) (same); Final Rule, 75 Fed. Reg. at 39,843 and 39,845 (same).

The 2010 change was a "liberalizing" one under the term's ordinary meaning. Before the 2010 addition of § 3.304(f)(3), the legal standard governing a claim of PTSD-based disability in Mr. Ortiz's circumstances required corroborating evidence, beyond the veteran's own testimony, to confirm the in-service occurrence of the asserted stressor. The 2010 change eliminated that requirement of the affirmative case for veterans like Mr. Ortiz. The requirements for affirmatively showing entitlement, in short, became less strict. *See Sanchez-Navarro*, 774 F.3d at 1384 (Section "3.304(f)(3) applies a more relaxed standard" than

preexisting subsection (f).); *Hall*, 717 F.3d at 1371 (Section 3.304(f)(3) "grants veterans a special exception to th[e] normal evidentiary burden" stated in the preexisting subsection (f).); *NOVA*, 669 F.3d at 1344 (referring to § 3.304(f)(3) as a "lower evidentiary standard").

The Secretary agrees: "We do not dispute that section 3.304(f)(3) made the evidentiary burden for establishing service connection for PTSD based upon fear of hostile terrorist or military activity less strict." Secretary Response Br. at 17 n.7 (citing above passages). For good reason: Before the change, Mr. Ortiz's claim was rejected, whereas after the change, it was granted undisputedly because of the elimination of a concrete component of what he was previously required to show in his affirmative case for entitlement to an award.

In fact, the 2010 change is a prototypical example of a "liberalizing" change resulting in an "award." *Cf. McBoyle v. United States*, 283 U.S. 25, 27 (1931) (Holmes, J.) (relying on the idea of a "picture" "evoke[d] in the common mind"). The term "liberalizing" when used with "law" and "VA issue" in the context of a "claim" most naturally covers a relaxation of a claimant's affirmative burden. That is exactly what the 2010 change does. A veteran generally has the affirmative burden of production to establish the elements of a claim of entitlement (though VA has a duty to assist). *See* 38 U.S.C. § 5107(a) ("Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under laws administered by the Secretary."); *id.* § 5103A (duty to assist); 38 C.F.R. § 3.159 (implementing § 5103A). The 2010 amendment changed concrete components of what VA must consider "sufficient proof," 38 U.S.C. § 1154(b), to establish an element of entitlement, so it relaxed the veteran's affirmative responsibility in presenting and supporting a claim for benefits.

This meaning fits the context of 38 U.S.C. § 5110(g) and 38 C.F.R. § 3.114(a). Those provisions provide up to one extra year of benefits when an award has been made or increased pursuant to a qualifying "[c]hange of law or [VA] issue" (§ 3.114(a) title)—allowing veterans a brief extra period to become aware and to take advantage of a change that newly entitles them to an award or an increase of compensation. The ordinary meaning of "liberalizing" is not in any way out of place in that context. When Congress enacted the provision now codified as § 5110(g), the congressional committees, using the language of "liberalizing," explained: "Claimants who have no knowledge of the benefits or are not identified by [VA] . . . may be penalized by not filing promptly." S. Rep. No. 87-2041, at 6; H. Rep. No. 87-2123 at 6 (same). Applying the term's ordinary meaning mitigates the delay penalty.

B

The Secretary nevertheless argues that we should not apply the ordinary meaning of "liberalizing" here, resting that argument entirely on *Spencer* and *Routen*. For two independent reasons, however, we reject the argument. First, neither *Spencer* nor *Routen* actually decided the issue of what changes suffice to trigger application of the regulation (or, for that matter, of the statute) to give a veteran the earlier effective date. They decided a different issue: what the implications of the statute (and regulation) are for the availability of a new original claim that, outside the statutory reconsideration paths, avoids the otherwise-applicable statutory bar based on a previous final rejection of a veteran's earlier claim. Second, the change in the present case materially differs from the particular changes that the court in *Spencer* and *Routen* held insufficient to allow a new original claim. We conclude not only that the two precedents provide no persuasive basis for rejecting the ordinary-meaning application of "liberalizing" to cover § 3.304(f)(3) but also that, even if the formulations used by

*Spencer* and *Routen* are borrowed to define "liberalizing," § 3.304(f)(3) qualifies.

1

Unlike this case, neither *Spencer* nor *Routen* involved an effective-date issue, so in neither case did this court directly apply 38 C.F.R. § 3.114(a) or decide what "liberalizing" means in identifying a change of law or VA issue that qualifies for the earlier effective date of an award. Indeed, unlike this case—where the claim was reopened and there is no dispute about the propriety of that reopening (or grant of the claim)—neither *Spencer* nor *Routen* involved a claim that was reopened under 38 U.S.C. § 5108. The portions of both decisions on which the Secretary relies involve only whether a new original claim was available because of the asserted change of law or regulation.

In *Spencer*, the veteran had filed a claim for benefits based on his diagnosis of multiple sclerosis. 17 F.3d at 370. The regional office denied his claim because he failed to provide sufficient evidence that "the disability was incurred in or aggravated by his service in the military." *Id.* The regional office's decision became final. Years later, the veteran sought *both* to reopen his finally decided claim because of new and material evidence *and* to have his claim considered as a new original claim because there was an "intervening change in law," namely the passage of the Veterans' Judicial Review Act of 1988 (VJRA). *Id.* at 371–73. The Board, and then the Veterans Court, determined that the veteran's claim warranted neither reopening nor fresh consideration. *Id.* at 370–71.

We agreed. As to the denial of reopening for want of new and material evidence, we concluded that we lacked jurisdiction to address it, for reasons not pertinent to the issue now before us in this case. *See id.* at 373–74. The veteran's right to proceed therefore depended on whether he had available a new original claim. We adopted the Veterans Court's conclusion, as quoted above, that § 5110(g),

though not directly authorizing a new avenue for reconsideration of a final decision, implicitly presupposes that *sometimes* a change of law or regulation can support the availability of a new original claim; but we recognized that such availability requires a modification of the express statutory protection of finality, notably that of § 7104, and the limited express statutory provisions for reconsideration. *Id.* at 371–72; *Spencer CAVC*, 4 Vet. App. at 287–89. It was in harmonizing express statutory commands (finality, with two limited paths around finality) with an implication from another statutory provision directed at another issue (effective dates) that we decided that a new original claim requires "a new basis of entitlement to a claimed benefit as the result of an intervening change in law or regulation." *Spencer*, 17 F.3d at 373. And we held that the generic VJRA changes on which the veteran relied did not meet that standard because they "were unmistakably procedural in nature" and thus did not "*substantively* affect[] the nature" of the finally decided claim. *Id.* at 372–73.

*Routen* involved a materially identical posture. In that case, the veteran's claim had been denied in a final decision before the relevant regulatory change. 142 F.3d at 1436–37. After the regulatory change (concerning the government's rebuttal burden on in-service aggravation of a preexisting injury), the veteran sought to reopen his claim based on new and material evidence and to have his claim considered de novo as a new original claim. *Id.* The regional office declined to reopen the veteran's claim for new and material evidence and did not consider the claim a new original claim. *Id.* The Board and the Veterans Court again agreed with the regional office. *Id.*

So did we. As to the denial of reopening, we determined that a "presumption" is not itself new and material evidence. *Id.* at 1439–41. As to the new-original-claim issue, we concluded that the relevant regulatory amendment was insufficient to support allowing the claim as a new original one. *Id.* at 1441–42. We recognized that the issue was one

of seeking to harmonize the express statutory finality prin-ciple of § 7104 with an implied presupposition found in § 5110(g) (and its implementing regulation), where neither of the two express statutory authorizations for reconsider-ation (clear and unmistakable error, and reopening) was applicable. *Routen*, 142 F.3d at 1442 (emphasizing that "the logic of the intervening change rule, if it is to escape the bar of § 7104(b), must be that the intervening change in law creates a new cause of action"). And we held that changing the government's rebuttal burden (newly to re-quire clear and unmistakable evidence) was a "procedural" one, and made no "substantive change" in what the veteran had to show to be entitled to an award, and thus did not support recognition of a new original claim. *Id.*

*Spencer* and *Routen* therefore involved only the ques-tion of how far express statutory provisions—the statutory finality bar, subject to only limited express statutory routes for reconsideration—had to be deemed implicitly modified by § 5110(g) and its implementing regulation, which ad-dress only the effective date of an award for which the stat-ute elsewhere provides express authority. That is not the question here. In this case, there is no question of modify-ing an express statutory means for reconsideration: It is undisputed before us that one of the express means (reo-pening based on new and material evidence) was properly used. The only question here is the proper application of the effective-date prescription (§ 5110(g) as implemented by § 3.114(a)) in a matter that undisputedly fell within an express statutory avenue of reconsideration. That question did not arise in *Spencer* and *Routen*, and unlike the ques-tion answered in those cases, the question here does not present any facial conflict with other express legal con-straints whose modification must be minimized. *Routen* it-self recognized that the questions are distinct. 142 F.3d at

1441 (The regulation "§ 3.114 addresses a different issue. It sets the effective date of awards[.]").[7]

"When a prior decision does not 'squarely address[] [an] issue,' a court remains 'free to address the issue on the merits' in a subsequent case." *Arthrex, Inc. v. Smith & Nephew, Inc.*, 880 F.3d 1345, 1349 (Fed. Cir. 2018) (alterations by *Arthrex*; quoting *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993)). *Spencer* and *Routen* do not control the resolution of the issue here. And the Secretary has given no sound reason that the questions in those cases and the question in this case must have the same answer. Relying only on *Spencer* and *Routen*, which we conclude do not control, the Secretary has furnished no reason that interpretation of the regulation at issue, § 3.114, should depart from its ordinary meaning—which makes sense in context and under

---

[7] The distinction is reinforced by the fact that the statute (§ 5110(g)) and the regulation (§ 3.114(a)) include changes that result in an "increase" of an already granted award, yet the court in *Routen* spoke of a "new cause of action," 142 F.3d at 1436, 1441–42. Although the court in *Routen* did not give a specific meaning to that phrase different from the "substantive," "new basis of entitlement" language that it (and the court in *Spencer*) used, that language would be odd as a label for a change (covered by § 5110(g) and § 3.114(a)) that simply increases amounts of compensation, as by providing for a higher rating than the one the same facts previously supported. *Cf.* Vet. Aff. Op. Gen. Couns. Prec. 9-92 (opining that "[w]here an increased rating is occasioned only by revision of criteria for rating psychoneurotic disorders which became effective February 3, 1988, the increased rating is to be considered based on a liberalizing VA issue per 38 U.S.C. § 5110(g) and 38 C.F.R. § 3.114," even though the elements to grant the claim remained unchanged).

which, as noted, the Secretary agrees § 3.304(f)(3) was a liberalizing change.

2

We conclude that *Spencer* and *Routen* are not controlling here for another reason: The 2010 addition of § 3.304(f)(3) materially differs from the changes that *Spencer* and *Routen* deemed insufficient to support a new original claim. Even if, in place of the ordinary meaning, the formulations used by *Spencer* and *Routen* are borrowed to define "liberalizing," the 2010 addition of § 3.304(f)(3) qualifies.

a

Just before the 2010 addition, a showing of service connection for a PTSD claimant in Mr. Ortiz's position required: "medical evidence diagnosing the condition in accordance with [38 C.F.R.] § 4.125(a) of this chapter; a link, established by medical evidence, between current symptoms and an in-service stressor; and credible supporting evidence that the claimed in-service stressor occurred." 38 C.F.R. § 3.304(f); *see also supra* n.5. After the 2010 addition, the "credible supporting evidence" requirement—a requirement of corroboration—no longer applies for those in Mr. Ortiz's position. Specifically, "the veteran's lay testimony" suffices if certain preconditions are met (and the government does not provide clear and convincing contrary evidence). 38 C.F.R. § 3.304(f)(3).[8] The 2010 change thus

---

[8] The provision added in 2010 requires satisfaction of certain preconditions, such as confirmation from specified psychiatrist or psychologist that "the claimed stressor is adequate to support a diagnosis of [PTSD]" and consistency of the stressor with the veteran's service. 38 C.F.R. § 3.304(f)(3). The Secretary, which agrees that the 2010 provision is less strict than the predecessor version, has not shown that these preconditions make the

eliminated a crucial, concrete component of what was required for the veteran's affirmative case to establish entitlement.

This change is fairly described as a "new basis of entitlement." *Spencer*, 17 F.3d at 372, 373. It is also fairly described as more than "procedural." *Id.*; *see also Carmell v. Texas*, 529 U.S. 513, 544–45 (2000) (concluding that an elimination of a corroboration requirement went to the "sufficiency of the evidence . . . for meeting the burden of proof" and thus was not a "mode[] of procedure"). In fact, the court in *Routen* suggested that something materially similar, if not identical, would meet its own standard. *See* 142 F.3d at 1441–42 ("Thus, if the old law required proof of facts A, B, and C, and the new law requires proof of facts A, B, and D, a veteran who lost the A, B, C case under the old law because he could not establish C would seem free to claim under the new law, assuming he can establish A, B, and D.").

The Secretary suggests that there is a difference between a fact as an element and evidence of such a fact. *See* Secretary Response Br. at 13–14. But *Spencer* and *Routen* do not elaborate such a distinction. Moreover, it remains true that the 2010 addition of § 3.304(f)(3) eliminated a crucial component of a veteran's affirmative case, whether the component is called evidence, fact, or an element, and that eliminating a corroboration requirement is more substantive than procedural and, in a real-world sense, creates a new basis of entitlement. Section 3.304(f) itself, quoted above, in prescribing the elements of the veteran's case, pays little attention to the distinction between evidence and the fact evidenced, including a mix of the two categories in its three requirements—"evidence diagnosing

_____

elimination of the corroboration requirement, so that the veteran's lay testimony suffices, *id.*, anything other than liberalizing.

[PTSD]," "a link, established by medical evidence," and "supporting evidence."  And VA's general counsel, in at least one precedential opinion, has treated relaxation of evidentiary requirements for a claimant as substantive for purposes of the "liberalizing" standard.  *See* Vet. Aff. Op. Gen. Couns. Prec. 26-97 ("Because this change *liberalized the evidentiary basis* on which entitlement to a benefit could be established, it may be considered a *substantive change* providing a new basis for establishing entitlement to benefits and, consequently, a liberalizing VA issue for purposes of 38 C.F.R. § 3.114(a)." (emphases added)); *cf.* Vet. Aff. Op. Gen. Couns. Prec. 9-92 (opining that "[w]here an increased rating is occasioned only by revision of criteria for rating psychoneurotic disorders which became effective February 3, 1988, the increased rating is to be considered based on a liberalizing VA issue per 38 U.S.C. § 5110(g) and 38 C.F.R. § 3.114," even though the elements to grant the claim remained unchanged).

In relevant respects, the 2010 change is akin to a creation of a presumption that, when certain preconditions are met, a crucial element of a service-connection case is presumed proved.  That matters because, notwithstanding *Spencer* and *Routen*, the Secretary agrees that such a presumption *is* a liberalizing change.  Secretary Response Br. at 14 n.5; *see also* Effective Dates of Benefits for Disability or Death Caused By Herbicide Exposure; Disposition of Unpaid Benefits After Death of Beneficiary, 68 Fed. Reg. 50,966, 50,966 (Aug. 25, 2003) (noting that the "regulations establishing presumptions that certain diseases are associated with herbicide exposure in service" were "liberalizing"); Oral Arg. at 15:56–16:48, 19:50–21:28.  And we have treated such a presumption as a liberalizing change.  *See Hunter v. Shinseki*, 538 F. App'x 904, 905 (Fed. Cir. 2013) (concluding that a statute and certain implementing regulations that "modified the presumption of herbicide exposure for veterans who served in Vietnam . . . [were] liberalizing provision[s]"); *Williams v. Principi*, 310 F.3d

1374, 1377–78, 1380–81 (Fed. Cir. 2002) (accepting that a creation of a presumption is liberalizing).

Section 3.304(f)(3) is materially similar to a presumption. A presumption itself is an "[e]videntiary rule," which effectively "supplies the required evidence" when specified "preconditions are satisfied." *Snyder v. McDonough*, 1 F.4th 996, 1004 (Fed. Cir. 2021); *see also Routen*, 142 F.3d at 1440 ("When the predicate evidence is established that triggers the presumption, the further evidentiary gap is filled by the presumption."). Section 3.304(f)(3) does the same. Presumptions are generally rebuttable on proof that meets a specified standard of convincingness. *Routen*, 142 F.3d at 1440. Section 3.304(f)(3) states that the government can overcome the exception to the corroboration requirement when there is "clear and convincing evidence to the contrary."

For those reasons, the 2010 addition of § 3.304(f)(3) fairly comes within the key formulations articulated in *Spencer* and *Routen* if those formulations are borrowed to define "liberalizing." It established a new basis of entitlement by alleviating the substantive burden of presenting specified concrete evidence previously required of the veteran as part of the affirmative case. Although the court in *Routen* also used the phrase "new cause of action," 142 F.3d at 1436, 1441–42, it did not specify content for that phrase apart from the "new basis of entitlement" and "substantive" formulations. In fact, the Secretary argues here that those formulations state the standard of *Spencer* and *Routen*, without separate reference to "new cause of action." *See* Secretary Response Br. at 16 ("As explained above, a 'liberalizing law or VA issue' within the context of 38 C.F.R. § 3.114(a) and 38 U.S.C. § 5110(g) is one that effects a substantive change in law or regulation and creates a new basis for entitlement to a benefit. *Routen*, 142 F.3d at 1441–42; *Spencer*, 17 F.3d 368."). We conclude that § 3.304(f)(3) lies on the qualifying side of the line drawn (in answering a different question) in *Spencer* and *Routen*.

b

*Spencer* and *Routen*, on their facts, also did not involve changes like those made by the 2010 addition of § 3.304(f)(3).  The changes ruled on in those cases did not eliminate concrete components of the veteran's affirmative case for entitlement to particular benefits.

In *Spencer*, we rejected the contention that a set of general changes made by the VJRA created a new basis of entitlement, concluding that the "reforms implemented by the VJRA were directed to improving the adjudicative process."  17 F.3d at 372.  The opinion's focus was on the new availability of judicial review, but the court mentioned, as well, the provision that "[w]hen there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant," 38 U.S.C. § 5107(b).  *See Spencer*, 17 F.3d at 372.  Neither § 5107(b) nor the other measures invoked by the veteran in *Spencer* altered any particular component of the veteran's case.  Even § 5107(b) is an across-the-board standard for how persuaded VA must be of whatever particular submission the veteran makes.  The Secretary here has made no argument specifically focused on § 5107(b), let alone one contending that it is relevantly similar to § 3.304(f)(3).

*Routen* likewise did not involve a concrete relaxation of a component of a veteran's affirmative case.  Rather, it involved a heightening of the government's rebuttal burden in a particular situation.  A regulation provided that, when a veteran claims disability based on aggravation during service of a preexisting injury, *see* 38 U.S.C. § 1110 (wartime service), § 1131 (peacetime service), all the veteran needed to show was a pre-service injury that worsened during service.  The government could rebut the presumption that it was the service that aggravated the injury by showing that the worsening was the natural progression of the preexisting injury.  For wartime veterans, the government

had to make that showing by "clear and unmistakable evidence," but for peacetime veterans, the government could make the showing by "available evidence of a nature generally acceptable as competent." 142 F.3d at 1438 (internal quotation marks omitted). The regulatory change at issue in *Routen* was VA's imposition on the government, for its rebuttal case involving aggravation claims of peacetime veterans, of the higher degree of persuasiveness (clear and unmistakable evidence) already imposed on the government for wartime veterans. *Id.*

It was that regulatory change *Routen* held not to qualify. That change did not alter the veteran's affirmative case at all. It altered only the government's rebuttal case—and did so only at the general level of specifying how persuasive the government's evidence must be, not by altering particular components of proof. Those features critically differ from the elimination of a proof element of a veteran's affirmative case that was effected by the 2010 addition of § 3.304(f)(3).

C

To the extent relevant, VA's statements in adopting the 2010 the Final Rule underscore the conclusion that § 3.304(f)(3) is liberalizing. In the Final Rule, VA recognized that the 2010 amendment effectively "eliminate[d]" an evidentiary "requirement" when the specified preconditions were met. *See* 75 Fed. Reg. at 39,843 (explaining that "[t]his amendment *eliminates the requirement* for corroborating that the claimed in-service stressor occurred if" the preconditions are met (emphasis added)); Proposed Rule, 74 Fed. Reg. at 42,617 (same). And VA characterized the effect of § 3.304(f)(3) as "liberalizing." *See* Final Rule, 75 Fed. Reg. at 39,843 ("The Department of Veterans Affairs (VA) is amending its adjudication regulations governing service connection for posttraumatic stress disorder (PTSD) by *liberalizing in some cases the evidentiary standard* for establishing the required in-service stressor."

(emphasis added)); *id.* at 39,845 ("Opposition to Liberalizing Evidentiary Standard"); *id.* ("VA received written comments objecting to the liberalizing evidentiary standard for PTSD claims based on fear of hostile military or terrorist activity.").

The Veterans Court in *Foreman* concluded that the 2010 addition of § 3.304(f)(3) was "procedural in nature and therefore not liberalizing for effective date purposes" and stated that its conclusion was "bolster[ed]" by VA's statements "that § 3.304(f)(3) was intended to decrease the burden on veterans and VA in researching claimed stressors, improve timeliness, and ensure consistent decision-making." 29 Vet. App. at 152. To be sure, the Final Rule says that § 3.304(f)(3) would "facilitate the timely processing of PTSD claims by simplifying the development and research procedures that apply to these claims." 75 Fed. Reg. at 39,843; *see also id.* at 39,845 ("Finally, we believe that this rule will improve the timeliness of the adjudication of claims of all veterans by eliminating the need to search for corroborating evidence in certain cases."); Proposed Rule, 74 Fed. Reg. at 42,618 ("Improved timeliness, consistent decision-making, and equitable resolution of PTSD claims are the intended results of the revised regulation."). But those statements do not suggest a procedural character of the change actually made: A substantive change can be made to achieve process benefits. For example, a presumption of service connection would improve timeliness and consistency of decisionmaking, yet this court and VA have determined that a law or VA issue creating such a presumption is liberalizing.

Finally, VA in the Final Rule asserted that the 2010 addition of § 3.304(f)(3) "governs procedural matters rather than creating a new basis for entitlement to service connection for PTSD because it merely relaxes under certain circumstances the evidentiary standard for establishing occurrence of a stressor." 75 Fed. Reg. at 39,851. On appeal, VA does not ask for deference to that legal

characterization.  The statement by itself does not alter our analysis of what the Final Rule actually does, whether the change meets the best understanding of "liberalizing" in § 3.114(a), or the proper understanding and implications of *Spencer* and *Routen*.

## III

For the foregoing reasons, we reverse the decision of the Veterans Court.

The parties shall bear their own costs.

## **REVERSED**