**FILED**
United States Court of Appeals
Tenth Circuit

January 27, 2022

Christopher M. Wolpert
Clerk of Court

<u>**PUBLISH**</u>

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

———————————————

THE TRIAL LAWYERS COLLEGE, a nonprofit corporation,

      Plaintiff - Appellee,

v.

GERRY SPENCE TRIAL LAWYERS COLLEGE AT THUNDERHEAD RANCH, a nonprofit corporation; GERRY L. SPENCE; JOHN ZELBST; REX PARRIS; JOSEPH H. LOW; KENT SPENCE,

      Defendants - Appellants.

No. 20-8038

———————————————

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D.C. No. 1:20-CV-00080-JMC)**

———————————————

Timothy Getzoff, Holland & Hart LLP, Boulder, Colorado (Bradley T. Cave, P.C. and Jeffrey S. Pope, Holland & Hart LLP, Cheyenne, Wyoming, with him on the briefs), for Defendants-Appellants.

Christopher K. Ralston, Phelps Dunbar LLP, New Orleans, Louisiana (Lindsay Calhoun and James Gilbert with him on the briefs), for Plaintiff-Appellee.

———————————————

Before **BACHARACH**, **BRISCOE**, and **MURPHY**, Circuit Judges.

———————————————

**BACHARACH**, Circuit Judge.

_____

This appeal grew out of a dispute over a program (called "The Trial Lawyers College") to train trial lawyers. The College's board of directors splintered into two factions, known as the "Spence Group" and the "Sloan Group." The two groups sued each other: The Spence Group sued in state court for dissolution of the College and a declaratory judgment recognizing the Spence Group's control of the Board; the Sloan Group then sued in federal court, claiming trademark infringement under the Lanham Act.

Both groups sought relief in the federal case. The Spence Group requested a stay, hoping to obtain a ruling in state court before the federal case proceeded. The Sloan Group requested a preliminary injunction.

The federal district court decided both requests in favor of the Sloan Group: The court denied the Spence Group's request for a stay and granted the Sloan Group's request for a preliminary injunction. The Spence Group appealed both rulings.

We lack jurisdiction to review the district court's denial of a stay. After the Spence Group appealed the federal district court's ruling, the state court resolved the dispute over Board control. So this part of the requested stay became moot. The remainder of the federal district court's ruling on a stay does not constitute a reviewable final order.

But we do have jurisdiction to review the grant of a preliminary injunction. In granting the preliminary injunction, the district court found

2

irreparable injury, restricting what the Spence Group could say about its own training program and ordering removal of sculptures bearing the College's logo.

The Spence Group challenges the finding of irreparable harm, the scope of the preliminary injunction, and the consideration of additional evidence after the evidentiary hearing. In our view, the district court had the discretion to consider the new evidence and grant a preliminary injunction. But the court went too far by requiring the Spence Group to remove the sculptures.

## I.    We lack jurisdiction over the denial of a stay.

The Spence Group moved to stay the federal proceedings until the state court's issuance of a decision. The federal district court denied the motion, and the state court issued a partial decision. We lack jurisdiction to consider the federal district court's denial of a stay.

### A.    The state court resolved the issue of Board control, mooting this part of the appeal.

In the state-court action, the Spence Group requested the removal of two board members aligned with the Sloan Group. After making this request, the Spence Group asked the federal district court to postpone any substantive rulings until the state court decided who controlled the Board.

During the pendency of our appeal, the state court rejected the Spence Group's request for removal of the two board members, concluding

that they had been validly elected. This conclusion effectively left the Sloan Group in control of the Board, mooting this part of the requested stay. *See Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109–10 (10th Cir. 2010).[1]

**B.    We also lack jurisdiction to consider the requested stay while the state court considers the Spence Group's request for dissolution.**

In state court, the Spence Group also requested dissolution of the College, claiming misconduct, loss of assets, and inability to carry out the College's stated purposes. The state court has not ruled on the request for dissolution, so our appeal isn't moot for this part of the requested stay. We nonetheless lack jurisdiction in the absence of a final order.

We typically obtain appellate review by the entry of a final order. *See* 28 U.S.C. § 1291. An order is typically considered "final" if

- it ends the litigation on the merits and

- the court's only remaining obligation is to execute the judgment.

*Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 275 (1988). The denial of a stay would not end the litigation on the merits, so the ruling would not ordinarily be considered "final." *Id.* at 277–78.

---

[1]    The Spence Group has not requested a stay to allow an appeal of the state court's ruling.

But when parts of the case would remain, we can consider some decisions "final" under the collateral-order doctrine and the practical construction rule. *See Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994) (stating that under the collateral-order doctrine, a decision that doesn't terminate the action can be considered "final" when required by "the interest of 'achieving a healthy legal system'") (quoting *Cobbledick v. United States*, 309 U.S. 323, 326 (1940)); *W. Energy All. v. Salazar*, 709 F.3d 1040, 1049 (10th Cir. 2013) (stating that courts could alternatively construe a ruling as final based on practical considerations).

Under the collateral-order doctrine, rulings are deemed final if they

- are conclusive,

- resolve important questions completely separate from the merits, and

- are otherwise unreviewable after entry of a final judgment.

*See Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994). The Spence Group invokes this doctrine, but it doesn't apply.

The Spence Group based its motion for a stay on *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), which permits a federal court to stay its case while a parallel state case proceeds. *Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994). But a stay of the federal case would not constitute a conclusive ruling. As a result, the Supreme Court has concluded that the denial of a stay under *Colorado*

5

*River* is "inherently tentative" and not considered "final" for purposes of appellate review. *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 278 (1988). The tentative nature of the district court's ruling prevents application of the collateral-order doctrine.

The Spence Group tries to distinguish this conclusion, arguing that the federal district court conclusively determined that the federal and state cases were not parallel. But we decide appealability based on the category of the order rather than the particular facts of the case. *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659, 664 (10th Cir. 2018). Because the Supreme Court categorically refused to apply the collateral-order doctrine to the denial of stays under *Colorado River*, the district court's ruling doesn't trigger the collateral-order doctrine.

Even when the collateral-order doctrine doesn't apply, the practical construction doctrine sometimes triggers appellate jurisdiction based on a practical construction of "finality." *State of Utah ex rel Utah State Dep't of Health v. Kennecott Corp.*, 14 F.3d 1489, 1495–96 (10th Cir. 1994). The Tenth Circuit has construed the doctrine narrowly, applying it "only in the most exceptional circumstances." *Quinn v. CGR*, 828 F.2d 1463, 1467 (10th Cir. 1987). To determine the applicability of the practical construction doctrine, we consider whether the issue is so "urgent" and "important" that "the danger of injustice by delaying appellate review

outweighs the inconvenience and costs of piecemeal review." *Bender v. Clark*, 744 F.2d 1424, 1427 (10th Cir. 1984).

The denial of a stay does not trigger this narrow exception. Piecemeal litigation is unlikely because the state court has already decided the issue of Board control, and the Spence Group doesn't identify an unsettled issue of unique urgency. So appellate jurisdiction doesn't arise under the practical construction doctrine.

C.    **We can't exercise pendent appellate jurisdiction.**

In rare circumstances, the doctrine of "pendent appellate jurisdiction" allows us to exercise jurisdiction over rulings that would ordinarily be unreviewable until the end of the case. *Timpanogos Tribe v. Conway*, 286 F.3d 1195, 1200 (10th Cir. 2002). We can exercise pendent appellate jurisdiction only when

- an unappealable decision is "inextricably intertwined" with an appealable ruling or

- "meaningful review of the appealable" decision would require review of the otherwise unappealable decision.

*Id.* (quoting *Moore v. City of Wynnewood*, 57 F.3d 924, 930 (10th Cir. 1995)). The Spence Group argues that (1) appellate jurisdiction exists over the grant of a preliminary injunction and (2) the issues involving a stay and preliminary injunction are intertwined.

7

The Spence Group's first argument is correct, for we do have jurisdiction over the Spence Group's challenge to the grant of a preliminary injunction. 28 U.S.C. § 1292(a). But that ruling isn't inextricably intertwined with the denial of a stay.[2]

The district court's grant of a preliminary injunction turned on likelihood of success on the merits, existence of an irreparable injury, balancing of harms, and effect on the public interest. The Spence Group argues that the district court analyzed the likelihood of success by presuming the Sloan Group's control over the College and the trademarks, which were the issues to be decided by the state court. But this alleged presumption doesn't matter now: During the pendency of our appeal, the state court has decided control of the Board. So we can't exercise pendent appellate jurisdiction on the dissolution claim.

## II.    The federal district court had discretion to grant a preliminary injunction, but erred in requiring removal of sculptures.

The district court granted a preliminary injunction, finding in part that the Sloan Group had shown irreparable injury. The Spence Group challenges this finding, the order to remove sculptures, restrictions on

---

[2]    The Spence Group argues that the issues are intertwined because its own opening brief incorporates discussion of the stay when challenging the grant of a preliminary injunction. But to determine pendent jurisdiction, we consider whether the district court's rulings are intertwined—not how the parties structure their appellate arguments.

what the Spence Group could say, and the consideration of evidence presented after the hearing had ended.

In reviewing the grant of a preliminary injunction, we apply the abuse-of-discretion standard. *Wyandotte Nation v. Sebelius*, 443 F.3d 1247, 1252 (10th Cir. 2006). A district court abuses its discretion when its "decision is premised on an erroneous conclusion of law or where there is no rational basis in the evidence for the ruling." *First W. Cap. Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1140 (10th Cir. 2017) (quoting *Awad v. Ziriax*, 670 F.3d 1111, 1125 (10th Cir. 2012)). Applying this standard, we conclude that the district court erred in ordering the removal of sculptures. But we reject the Spence Group's other challenges to the preliminary injunction.

### A.    The district court did not abuse its discretion by finding irreparable injury.

The Spence Group challenges the finding of irreparable injury, arguing that the district court erroneously relied on evidence of alumni inquiries and monetary loss. We apply the clear-error standard to the district court's factual findings and conduct de novo review over the court's legal conclusions. *Att'y Gen. of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 776 (10th Cir. 2009). The district court did not legally err or abuse its discretion in finding irreparable harm.

9

**1.    There was no presumption of irreparable injury at the time of the district court's decision.**

The Sloan Group argues that courts should presume irreparable injury whenever a plaintiff establishes trademark infringement. We disagree. Granted, we have sometimes referred to a presumption of irreparable injury in similar circumstances. *See, e.g.*, *Hutchinson v. Pfeil*, 211 F.3d 515, 522 (10th Cir. 2000) (stating that injury may be presumed when a party made "literally false or demonstrably deceptive" representations); *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1100–01 (10th Cir. 1991) (noting that injury may be presumed when a trademark is wrongfully appropriated), *overruled in part on other grounds by O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973 (10th Cir. 2004) (en banc) (per curiam), *aff'd & remanded sub nom. Gonzales v. O Centro Espirita Beneficente Uniiao do Vegetal*, 546 U.S. 418 (2006); *Amoco Oil Co. v. Rainbow Snow, Inc.*, 809 F.2d 656, 664 (10th Cir. 1987) (stating that injury may be presumed from a likelihood of confusion between trademarks).

But in 2006, the Supreme Court cautioned against categorical rules that would undermine the traditional four-part test for preliminary injunctions in cases involving intellectual property. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 393–94 (2006). This caution led four circuit courts to abrogate their precedents allowing a presumption of irreparable injury in cases involving copyright infringement. *TD Bank N.A.*

10

*v. Hill*, 928 F.3d 259, 279 (3d Cir. 2019); *Robert Bosch LLC v. Pylon Mfg. Corp*, 659 F.3d 1142, 1149 (Fed. Cir. 2011); *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 980–81 (9th Cir. 2011); *Salinger v. Colting*, 607 F.3d 68, 76–78 (2d Cir. 2010). Two circuits relied on the Supreme Court's cautionary statement in abrogating their precedents allowing a presumption of irreparable injury in cases involving trademark infringement under the Lanham Act. *Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205, 215 (3d Cir. 2014); *Herb Reed Enters., LLC v. Fla. Ent. Mgmt, Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013). More broadly, we have held that "later Supreme Court cases" allow a presumption of irreparable injury only when the underlying statute "mandate[s] injunctive relief." *First W. Mgmt.. Co. v. Malamed*, 874 F.3d 1136, 1143 (10th Cir. 2017).

After the district court ruled, Congress amended the Lanham Act to expressly allow a presumption of irreparable injury when the owner of a trademark proves likelihood of success on the merits. Trademark Modernization Act of 2020, Pub. L. 116-260, § 226(a), 134 Stat. 2200, 2208 (codified at 15 U.S.C. § 1116(a) (2020)). But no such presumption existed when the district court granted a preliminary injunction because the statute at that time didn't *mandate* an injunction as a remedy. *See* 15 U.S.C. § 1116(a) (2019) (stating only that courts have the "power to grant injunctions"). So we cannot presume irreparable injury based on a

11

likelihood of trademark infringement. Without any presumption, the Sloan

Group had to show irreparable injury.

### 2. Even without a presumption, injury to the College's reputation and goodwill could be considered "irreparable."

For irreparable injury, the Sloan Group had to prove a significant

risk of harm that couldn't "be compensated after the fact." *DTC Energy*

*Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1270 (10th Cir. 2018) (quoting

*First W. Cap. Mgmt. Co.*, 874 F.3d 1136, 1141 (10th Cir. 2017)). To assess

the significance of that risk, we may consider "the difficulty in calculating

damages, the loss of a unique product, and existence of intangible harms

such as loss of goodwill or competitive market position." *Dominion Video*

*Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1264 (10th Cir.

2004).

The Spence Group argues that without a presumption, the Sloan

Group didn't prove irreparable injury. In our view, however, the evidence

permitted a reasonable factfinder to infer irreparable injury.

Though a rebuttable presumption didn't exist, its underlying logic

could bear on the existence of irreparable injury.[3] *See Groupe SEB USA,*

*Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 205 n.8 (3d Cir. 2014)

("Although we no longer apply a presumption [of irreparable injury], the

---

[3] The presumption was simply an evidentiary rule that would serve to fill an evidentiary gap. *See Ortiz v. McDonough*, 6 F.4th 1267, 1281 (Fed. Cir. 2021).

12

logic underlying the presumption can, and does, inform how we exercise our equitable discretion in this particular case."); *adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 763 (9th Cir. 2018) (Clifton, J., concurring) (stating that the logic of the presumption informs the determination of irreparable injury even though the presumption itself no longer applies). That logic involves the difficulties in

- distinguishing between the services of the trademark owner and the services of a competitor and

- quantifying the damage from consumer confusion.

5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 30:46 (5th ed. 2021); *see Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 640 (1st Cir. 1992).

### 3. The district court could reasonably find irreparable harm to the College's reputation and goodwill.

Based on these difficulties, the district court could reasonably find irreparable injury from

- the College's efforts to protect its name and logo as trademarks and

- evidence of likely confusion among customers of the College.

The Sloan Group presented testimony of its efforts to differentiate the College from competitors. These efforts include registration of trademarks, investment in branded merchandise, and restrictions on use of the College's name when alumni give presentations.

13

On top of these steps to protect its trademarks, the Sloan Group presented evidence of likely confusion from the Spence Group's statements and advertisements. These statements and advertisements included

- a YouTube video, where the Spence Group referred to its own program as the "Trial Lawyers College" and displayed the College's trademarks, and

- mass emails from the Spence Group to individuals on the College's mailing list,[4] identifying members of the Spence Group as the "Directors" of the College and using a misleading signature that incorporates the College's name.

The Sloan Group pointed to five facts suggesting that the likelihood of confusion was ongoing:

1.    The "GerrySpenceTrialLawyersCollege@Thunderhead Ranch" listserv remained active.

2.    The YouTube video remained available.

3.    The ranch owned by the Spence Group continued to bear the name "Trial Lawyers College."

4.    The Spence Group continued to publicly promote a presentation made by a member of its group, which identified the member as "TLC's director of curriculum and staff training."

5.    The Spence Group used Instagram for a post that incorporated the College's logo and the hashtag "#triallawyerscollege."

Appellants' App'x, vol. 1, at 245.

---

[4]    The Sloan Group argues that its mailing list is akin to a customer list.

Taken as a whole, the evidence provided reasonable support for the finding of a risk to the College's reputation and goodwill. As the Spence Group argues, those risks could result at least partially from the loss of valuable board members and the suspension of in-person programming because of a global pandemic. The influence of those contributing causes could make it difficult for the Sloan Group to quantify its harm from the likelihood of confusion. *See Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 805 (8th Cir. 2003) ("Harm to reputation and goodwill is difficult, if not impossible, to quantify in terms of dollars."); *Am. Hosp. Supply Corp. v. Hosp. Prods. Ltd.*, 780 F.2d 589, 611 (7th Cir. 1986) (stating that damages could not adequately compensate the plaintiffs in part because the injury to their reputations and goodwill were "extremely difficult to calculate" (citing *Roland Mach. Co. v. Dresser Indus.*, 749 F.2d 380, 386 (7th Cir. 1984)). That difficulty could render the harm irreparable. *See Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 217 F.3d 8, 13–14 (1st Cir. 2000).[5] So the district court did not abuse its discretion in finding irreparable harm.

4.    **The Spence Group erroneously relies on a reference to a drop in donations and a failure to prove actual confusion.**

---

[5]    The Spence Group also argues that some alumni might rejoin the College when the dispute is resolved. But the district court could reasonably find an unquantifiable loss of goodwill from continued confusion among viewers of the Spence Group's emails and YouTube presentation.

The Spence Group points out that the district court referred to a drop in donations to the College and evidence of alumni inquiries to the Sloan Group. Based on these references, the Spence Group argues that

- a quantifiable drop in donations is "reparable" through monetary damages and

- the mere existence of questions cannot provide the sole evidence of actual confusion.

But even if we credit these arguments, they would not prevent a finding of irreparable injury.

The Spence Group argues that the injury here was quantifiable because the district court referred to a 10% dip in donations. There are two possible ways to interpret the district court's reference to a 10% dip in donations: (1) as direct evidence of irreparable injury or (2) as evidence that the Spence Group's confusing statements and advertisements have undermined the distinctiveness of the College's trademarks.

When a court's explanation can be read one of two ways, we don't typically choose the reading that would require reversal. *See Mackey v. Stanton*, 586 F.2d 1126, 1129–30 (7th Cir. 1978) (presuming that the district court intended its order to comply with governing law when the order could be interpreted in two ways). We thus interpret the district court's reference as simply an observation that the Spence Group's statements and advertisements had already started to undermine the distinctiveness of the College's trademarks.

16

Given this interpretation of the ruling, we must decide whether it fell within the district court's discretion. *See* p. 9, above. We recognize that "[d]istrict courts have broad discretion to evaluate the irreparability of alleged harm . . . ." *Wagner v. Taylor*, 836 F.2d 566, 575–76 (D.C. Cir. 1987). The court had to exercise this discretion when confronted with evidence of the College's economic losses. Some of these losses were quantifiable, such as the 10% dip in donations. But some of these economic losses involved intangible losses, like harm to the College's reputation and goodwill.[6] Those harms could defy easy measurement. *Medicine Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 805 (8th Cir. 2003); *K-Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 915 (1st Cir. 1989). So the district court could reasonably view these harms as irreparable. *See Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 217 F.3d 8, 13 (1st Cir. 2000).

The Spence Group argues that the Sloan Group didn't prove actual confusion by presenting evidence of alumni inquiries because

- inquiries from alumni could not constitute actual confusion,

- the alumni were not customers of the College,

- any alumni confusion had been dispelled, and

---

[6]    The Spence Group observes that the Sloan Group failed to prove that the donations related to the College's goodwill. But the district court elsewhere found that the Spence Group's action had created a risk to the College's reputation and goodwill.

- the Spence Group had not yet offered the alumni any commercial services due to the outbreak of a pandemic.

Even without actual confusion, the *likelihood* of confusion could contribute to a finding of irreparable injury. *See Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 741 (7th Cir. 2013) (stating that a likelihood of confusion was enough when coupled with the risk of "loss of valuable goodwill and control"); *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 313 (5th Cir. 2008) (stating that a likelihood of confusion was enough when coupled with threats to "potential business" and goodwill). Apart from alumni inquiries, the Spence Group's statements and advertisements could confuse customers about ownership of the College's trademarks. And with that confusion, the court could reasonably find a blurring of the College's distinctiveness from rival programs like the Spence Group's. The district court thus acted within its discretion when finding irreparable injury.

**B.    The district court didn't abuse its discretion by considering additional evidence after the hearing had closed.**

The Spence Group also challenges the district court's consideration of additional evidence after the evidentiary hearing had ended. We reject this challenge.

The additional evidence involved the activities of a member of the Spence Group: Mr. Rex Parris. At the evidentiary hearing, Mr. Parris

18

denied involvement with the Spence Group's effort to compete with the College. After the evidentiary hearing ended, however, the Sloan Group presented an audio recording. In that recording, Mr. Parris had openly discussed his involvement with the Spence Group's ongoing activities. The Spence Group objected, asking in the alternative for an opportunity to present rebuttal evidence. The district court overruled the objection, considering the Sloan Group's audio recording without allowing the Spence Group to present rebuttal evidence.

In reviewing that ruling, we apply the abuse-of-discretion standard. *Smith v. Rogers Galvanizing Co.*, 148 F.3d 1196, 1197–98 (10th Cir. 1998). To apply this standard, we consider the timing of the new evidence, its character, and the potential prejudice to the opposing party. *Id.* at 1198.

The Sloan Group presented the audio recording almost immediately after the evidentiary hearing had closed. This recording appeared to contradict Mr. Parris's testimony.

The Spence Group also argues that the court should have let Mr. Parris present additional testimony, explaining what he'd said in the recording. But the Spence Group didn't ask the district court to allow further testimony from Mr. Parris; the Spence Group instead asked, more generally, for an opportunity "to address [the Sloan Group's] arguments and submit additional evidence of their own into the record." Appellants'

19

App'x, vol. 2, at 284. But the Spence Group didn't say what else it wanted to present.[7]

In our view, the district court acted within its discretion in overruling the Spence Group's objection and in denying the alternative request to present rebuttal evidence.

### C.    The district court abused its discretion by ordering the Spence Group to remove two sculptures.

Though the district court didn't err in granting a preliminary injunction, it went too far by requiring the Spence Group to remove two sculptures. The sculptures appeared at a ranch, owned by a member of the Spence Group, which the College had previously used for programs. The sculptures included a logo registered as (1) the cattle brand for the ranch and (2) the trademark of the College.[8]

The threshold issue is how to characterize the order to remove the sculptures. This characterization could affect the test applicable in district

---

[7]    The Spence Group was more specific in its appellate briefs. In its opening brief, the Spence Group said that Mr. Parris would have explained "what [had] transpired over the last several months." Appellants' Opening Br. at 32–33. And in its reply brief, the Spence Group said that Mr. Parris could have explained "the context and meaning of the interview." Appellants' Reply Br. at 16.

[8]    One of these sculptures hung on the side of a barn; the other hung above a wooden archway. In opposing a preliminary injunction in district court, the Spence Group submitted a photograph of the sculpture hanging on the side of the barn. Based on the photograph, the district court referred only to this sculpture when explaining the order for a preliminary injunction. But the order itself went further, extending to any display of "the artwork depicting the '054 Mark." Appellants' App'x, vol. 2, at 308.

20

court because the movant's burden is greater when the requested injunction is "mandatory" rather than "prohibitory." *Fish v. Kobach*, 840 F.3d 710, 723–24 (10th Cir. 2016).

Preliminary injunctions are typically "prohibitory" in the sense that they prohibit the defendant from doing something. *See Schrier v. Univ. of Co.*, 427 F.3d 1253, 1260 (10th Cir. 2005) (defining a prohibitory injunction); *Tom Doherty Assocs. v. Saban Ent., Inc.*, 60 F.3d 27, 34 (2d Cir. 1995) (stating that preliminary injunctions are typically prohibitory). Other injunctions are considered "mandatory" when they "affirmatively require" action. *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1099 (10th Cir. 1991), *overruled on other grounds by O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973 (10th Cir. 2004) (en banc) (per curiam), *aff'd & remanded sub nom. Gonzales v. O Centro Espirita Beneficiente Uniao do Vegetal*, 546 U.S. 418 (2006).

In ordering removal of the sculptures, the district court imposed a mandatory injunction by affirmatively ordering the Spence Group to take action. *See Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010). The court could have issued a prohibitory injunction by disallowing training programs at the ranch as long as the sculptures remained visible to

---

This language prevents display of either sculpture. Given that language, the Spence Group has challenged the order as one requiring removal of both sculptures.

attendees. But the court went further by ordering the Spence Group to remove the sculptures. In requiring affirmative conduct, the court issued an injunction that was mandatory rather than prohibitory. *See Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (characterizing an order to remove content from YouTube as a mandatory injunction because the order required a party to take action). Because this part of the preliminary injunction was "mandatory," the Sloan Group had "to assure that the exigencies of the case support[ed]" a requirement to remove the sculptures. *O'Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (en banc) (per curiam), *aff'd and remanded sub nom. Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006).

The district court reasoned that

- the College had given considerable thought to trademarking the logo and

- the Spence Group had planned to host training programs at the ranch.

In our view, however, this reasoning did not justify the extraordinary step of a mandatory injunction.

At the time of the ruling, the Spence Group was not presenting any training programs at the ranch. The Spence Group attributed the inactivity to a worldwide pandemic and state-court litigation over control of the College.

22

On top of this inactivity, the district court could prevent programming at the ranch while the sculptures remained visible to customers. This type of prohibitory injunction would have adequately safeguarded the College's reputation and goodwill.

Given the inactivity at the ranch and the option to restrict programming at the ranch, the district court abused its discretion by ordering removal of the sculptures.

**D.    The district court did not abuse its discretion in enjoining the Spence Group from definitively purporting to be Directors of the College and using words associated with the College.**

The district court also enjoined the Spence Group from

- purporting "definitively to be [the College]'s true Board unless and until such time as the state court makes a ruling to that effect" and

- using "linguistic plays on words or various terms associated with The Trial Lawyers College to create or cause confusion as to whether [the Spence Group] [is] acting as The Trial Lawyers College."

Appellants' App'x, vol. 2, at 312.

The Spence Group argues that these prohibitions were overly broad through

- restrictions on speech outside the reach of the Lanham Act,

- extension to an allegedly unrelated issue, and

- one-sided restrictions on the Spence Group.

23

We reject these arguments.

### 1.    These parts of the injunction were prohibitory rather than mandatory.

The Spence Group characterizes these prohibitions as mandatory injunctions and urges heightened scrutiny. We disagree because these prohibitions did not affirmatively require the Spence Group to do anything; the court simply prohibited the Spence Group from making statements that could create further confusion.

### 2.    The prohibitions did not capture speech outside the reach of the Lanham Act.

The Spence Group also characterizes this part of the injunction as a restriction on speech unrelated to protection of the College's trademark.

The district court expressly allowed the Spence Group to refer to its claims involving control of the Board.[9] But the court prohibited the Spence Group from making statements that could confuse customers of the College.

These statements fell into two categories. In one category, the Spence Group couldn't say that it was the true Board of the College. In the

---

[9]    The Spence Group complains that the magistrate judge has treated the preliminary injunction as a "gag order" and recommended findings of contempt. But the Spence Group has objected to this recommendation, denying a violation of the preliminary injunction. *See In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1252 n.4 (10th Cir. 2014) (stating that we can take judicial notice of the filings in district court). The district judge has not ruled on the objection.

other category, the Spence Group couldn't use terminology to suggest that its training programs were part of the College. For both types of statements, the district court properly exercised its discretion by imposing restrictions to prevent confusion over the entity owning the trademarks.

> 3. **The district court's denial of a stay under *Colorado River* does not mean that the prohibitions extend to unrelated harm.**

The Spence Group also challenges the breadth of these prohibitions, arguing that they address harm unrelated to trademark infringement. For this challenge, the Spence Group relies on the district court's denial of a stay under *Colorado River*. According to the Spence Group, the district court could not enjoin statements pertaining to control of the Board because the ruling on a stay had distinguished between control of the College and its injury.

But lawsuits may address related harm without triggering the *Colorado River* doctrine. In addressing the harm to the Sloan Group, the court tried to prevent consumer confusion, which lies within the province of the Lanham Act. *See Hetronic Int'l, Inc. v. Hetronic Germany GmbH*, 10 F.4th 1016, 1042 (10th Cir. 2021) (noting that the Lanham Act's "core purposes" are to "protect[] U.S. consumers from confusion and 'assure a trademark's owner that it will reap the financial and reputational rewards associated with having a desirable name or product'") (quoting *McBee v. Delica Co.*, 417 F.3d 107, 121 (1st Cir. 2005)). The district court's denial

25

of a stay under *Colorado River* does not prevent the court from ordering the Spence Group to refrain from causing confusion among potential customers. So the district court had discretion to prohibit the Spence Group from definitively purporting to be directors of the College and using words associated with the College.

4.    **The prohibitions were not underinclusive and did not fail to preserve the status quo.**

The Spence Group also characterizes the prohibitions as underinclusive because they omitted any restrictions on speech by the Sloan Group. But the Spence Group never asked for an injunction against the Sloan Group. The court couldn't err by failing to enjoin the Sloan Group when no one had asked for such an injunction.

III.    **Conclusion**

We lack jurisdiction to review the district court's denial of a stay. But we do have jurisdiction to review the grant of a preliminary injunction. In granting a preliminary injunction, the court had the discretion to find irreparable injury, consider the Sloan Group's additional evidence, and restrict statements by the Spence Group. But the court erred by ordering removal of the sculptures.

Reversed and remanded for further proceedings as to removal of the sculptures from the ranch.